# THE STATE v. THOMAS WARD, Appellant.

## Division Two, July 14, 1914.

1. **LARCENY: Instructions: "Feloniously."** Where in a prosecution for grand larceny the court instructed the jury to find the accused guilty if they believed from the evidence that he wrongfully took and carried away a pocketbook and money from the possession of M., with the intent to fraudulently convert it to his own use and permanently deprive the owner thereof without his consent, the same being the property of M., the failure to require a finding that accused's intent in taking and carrying away the things stolen was felonious did not render the instruction erroneous.

2. ———: ———: **"Without Claim of Right."** Where the State's evidence tended to show that the accused picked the pocket of the prosecuting witness like an expert, that he was described to the police by his victim and was taken within an hour and a half with part of the money on him, and where he made no defense at the trial, a failure to require a finding that the taking was without claim of right would not be error, since the facts show there was no such claim.

3. ———: **Evidence: Identity of Stolen Bank Notes.** Evidence as to the identity of national bank notes found on the accused with those stolen from the prosecuting witness *held* sufficient to take the question to the jury.

4. ———: **Instructions: All the Law of the Case: Motion for New Trial: Appeal: Circumstantial Evidence.** Although the trial court's attention was at no time specifically called to a failure to instruct on circumstantial evidence, and the motion for new trial merely alleged that the court did not instruct on all the law of the case, still the Supreme Court is bound to see that no injustice is done by such omission, and it is *held*, in a trial for grand larceny, where direct evidence identifies the accused as the person who pressed against the prosecuting witness when his pocketbook was taken, and identifies money found on the accused as part of that then stolen, that an instruction on circumstantial evidence was not required.

Appeal from St. Louis City Circuit Court.—*Hon. William M. Kinsey,* Judge.

AFFIRMED.

*Barclay, Fauntleroy, Cullen & Orthwein* for appellant.

(1) The first instruction of the court in this case was insufficient in that it did not require the jury to find the defendant feloniously took, stole, and carried away money and property nor did it require them to find that the defendant took the property with the felonious intent to convert the same to his own use. State v. Richmond, 228 Mo. 362; State v. Weatherman, 202 Mo. 9; State v. Moore, 101 Mo. 326; State v. Campbell, 108 Mo. 614; State v. Lackland, 136 Mo. 31; State v. Rutherford, 152 Mo. 131; State v. Littrell, 170 Mo. 15; Barnes v. State, 59 N. W. 125. (2) Where the evidence on a trial is wholly circumstantial, the jury should be instructed that they should not convict the accused, unless the State has proved his guilt from the evidence beyond a reasonable doubt, by facts and circumstances, all of which are consistent with each other and with his guilt, and absolutely inconsistent with any reasonable theory of innocence. State v. Moxley, 102 Mo. 375; State v. Lackland, 136 Mo. 33; State v. Woolard, 11 Mo. 256; State v. Hill, 65 Mo. 87; State v. Bobbit, 215 Mo. 43; State v. Clark, 145 Iowa, 731; U. S. v. Chandler, 65 Fed. 308; U. S. v. Searcey, 26 Fed. 435. The courts have very frequently set aside a verdict of conviction of larceny where the proofs were circumstantial and not of such character as to prove, beyond reasonable doubt, that the accused and no other person committed the offense. Kaiser v. State, 53 N. W. (Neb.) 610; State v. Nesbit, 43 Pac. (Ida.) 66; McDaniel v. State, 90 S. W. 504; Roberts v. State, 40 S. E. 697; Hodnett v. State, 45 S. E. 60. (3) The evidence was insufficient to identify the money found in the possession of defendant as the money of the prosecutor, and the court erred in instructing the

jury on the theory of recent possession of stolen property. Burrill on Circumstantial Evidence, pp. 453, 171, 656; Wills on Circumstantial Evidence, pp. 63, 129; U. S. v. Osgood, 27 Fed. Cas. 15,971a; U. S. v. Candler, 65 Fed. 308; Bush v. Water Co., 43 Pac. 68; State v. Payne, 34 Pac. 320; Doss v. State, 13 S. W. 788; Knoll v. State, 55 Wis. 249; Crane v. State, 111 Ala. 45; State v. Nesbit, 43 Pac. 66.

*John T. Barker,* Attorney-General, and *Stephen K. Owen* for the State.

(1) The first point raised by defendant is that instruction number one is defective. The purpose of instructions in any case, as stated in State v. Richmond, 228 Mo. 365, is "To guide a jury of plain men to a correct understanding of the law of the case." If this instruction meets that requirement it is sufficient, as it is not necessary that it should be framed with the technical precision of an indictment. In the present case, the court was telling the jury what was necessary for the defendant to have done in order to have committed the crime of grand larceny. Larceny has been defined since 1866 in Missouri "as the wrongful or fraudulent taking and carrying away by any one of the personal property of another from any place, with a felonious intent to convert the same to his (the taker's) own use, and make it his own property, without the consent of the owner." State v. Gray, 37 Mo. 464. The instruction complained of required the jury to find "that defendant did wrongfully take and carry away (the property mentioned) from the possession of Woodson M. Miles, with the intent to fraudulently convert the same to his own use and permanently deprive the owner of the use thereof, without his consent, and that the same was the property of Woodson M. Miles, of the value of thirty dollars or more." What necessary element is lacking in this instruction? It is true the word felo-

niously is not used, but the jury was told that the taking must have been wrongful, with the intent to fraudulently convert the property to defendant's own use and permanently deprive the owner of the use thereof without his consent. Our courts hold that when the word "feloniously" is used in an instruction, it is not necessary to define it. State v. Scott, 109 Mo. 226; State v. Cantlin, 118 Mo. 100; State v. Barton, 142 Mo. 450; State v. Weber, 156 Mo. 249. So we take it that if it is not necessary to define the word feloniously, when used, it is not necessary to use it. To wrongfully take and carry away the property of another from his possession with the intent to fraudulently convert the same to his own use and permanently deprive the owner of the use thereof, without his consent, expresses the *animo furandi*, or as the civilians express it *lucri causa*, and that being true, the instruction is sufficient. A very similar instruction was given by the court in the case of State v. Martin, 28 Mo. 530. That case has been affirmed in a long line of decisions. In the case of the State v. Lackland, 136 Mo. 26, Judge GANTT, commenting on that instruction, l. c. 31, says: "In that instruction was the guilty knowledge that the cattle were not his own; the criminal intent to deprive the owner of his property, and the unlawful and fraudulent conversion to his own use without the consent of the owner." (2) Defendant complains because the court did not give an instruction on circumstantial evidence. It is only in cases where the State seeks to convict on circumstantial evidence alone that it is proper to give such an instruction. That is the rule laid down in one of the cases cited by appellant. State v. Bobbitt, 215 Mo. 43. None of the other cases cited by appellant are in point, for the reason that a conviction was sought on purely circumstantial evidence. For instance, in the case of the State v. Lackland, 136 Mo. 32, Judge GANTT says: "Now, in this case Mr. Ford never saw the hogs which defendant sold to Rogers and

Percy. No witness identified these hogs, or either of them, as Ford's hogs. Rogers and Percy did not know Ford's hogs. The case was one of circumstantial evidence, and the State's case depended upon the jury's finding and believing that the facts and circumstances in evidence pointed so strongly to defendant's guilt as to exclude any other reasonable hypothesis.'' In the case at bar there was proof that at least two of the bills stolen from prosecuting witness Miles, a twenty and a ten-dollar bill, were found in the exclusive possession of defendant, and that fact was sufficient reason for not giving an instruction on circumstantial evidence, and for giving one on the possession of recently stolen property, as will more fully appear hereafter. (3) It is contended that the evidence was not sufficient to identify the money found in possession of defendant as the money of Miles, and therefore the instruction on recent possession of stolen property was erroneous. The following cases will conclusively show that the court did not err in giving this instruction: 25 Cyc. 124; State v. Hoppe, 39 Iowa, 468; Baker v. State, 80 Wis. 416; State v. Griffin, 71 Iowa, 372; People v. Linn, 23 Cal. 150; People v. Wong Chong Suey, 110 Cal. 121; Bucker v. State, 26 S. W. 65; Comm. v. Montgomery, 11 Mass. 534.

ROY, C.—Defendant was convicted of grand larceny. Woodson M. Miles, a lawyer of Union City,

**Grand Larceny.** Tenn., in company with W. A. Beckham of that place, arrived in St. Louis about 7:30 a. m., August 8, 1912. Miles had in his left hip pocket a leather pocketbook containing three $20 bills and two $10 bills, all new and crisp, issued by the Third National Bank of Union City, Tenn. They went into a saloon, got a drink, and Miles took out his pocketbook to pay for the drinks; but Beckham paid, and Miles replaced his pocketbook. They proceeded to take a car at Eighteenth and Market streets. Just

before doing so, Miles felt his pocketbook in his pocket. There was a great crowd pushing and surging to take the car. Beckham went first, followed by two or three others ahead of Miles, who noticed the defendant deferentially yield precedence to him, and noticed that defendant crowded or was pressed close against him behind, and that there was considerable pressure on his pocketbook. Immediately on entering the car Miles felt his pocket and reported to Beckham that his money had been taken. They went down town, got breakfast, and reported the matter to the police. About an hour afterward, Miles saw defendant in the custody of the police. A $20 bill and a $10 bill, both new and crisp, issued by said bank, were taken from the person of the defendant by the police at the time of his arrest. On the trial those bills were shown to Miles and he was asked to testify whether they were the bills that he lost on the car. Objection was made on the ground that they had not been properly identified as the same money which was lost and that the question called for a mere conclusion of the witness. The objection was overruled, and he stated that they were the same. He said that he recognized them from the signatures of the officers of the issuing bank, those on the $20 bill being in red ink, and those on the $10 bill being in black ink, and from the fact that they were crisp and new, which, as the witness stated, was a rarity in his country. The witness stated that, after reporting his loss to Beckham, he asked the conductor if he saw that young man take his pocketbook. He testified that he recognized the defendant at the time of his arrest and at the trial as the same one who pressed behind him into the car. He testified: ''I didn't, of course, see him actually go into my pocket and take the money out, but I saw that he was right behind me, and I know that nobody else was right behind me, and at the same time I felt that pressure right there

over my pocketbook, and it was a very perceptible noticeable pressure.''

Beckham testified that he saw defendant behind Miles as he was entering the car, and that Miles reported his loss and asked the conductor if he saw the young man take his pocketbook. The witnesses further stated that they described the money and the man to the police and gave their address at the Pierce building, and that in about an hour the officer came for them. This witness recognized the defendant as the man at the car. The police officer testified that the bills shown at the trial were the ones which he took from the person of the defendant at the time of his arrest. The bills were read in evidence over the objection of defendant that they were not properly identified as the same bills which were stolen.

Defendant asked an instruction in the nature of a demurrer to the evidence, which was refused. He introduced no evidence.

The court gave the following as its principal instruction: ''First: If, upon consideration of all the testimony in the case in the light of the court's instructions, you find and believe from the evidence that at the city of St. Louis and State of Missouri, on or about the 8th day of August, 1912, or at any time within three years next before the filing of the information herein, the defendant, Tom Ward, did wrongfully take and carry away one black leather pocketbook and eighty dollars lawful money of the United States or any part thereof from the possession of Woodson M. Miles with the intent to fraudulently convert the same to his own use and permanently deprive the owner thereof without his consent, and that the same was the property of said Woodson M. Miles and of the value of thirty dollars or more, you will find the defendant Tom Ward guilty of grand larceny and assess his punishment at imprisonment in the penitentiary not less than two years nor more than five years, and unless you so

believe and find from the evidence, you will acquit said defendant of grand larceny.'' Also an instruction on the presumption arising from the recent possession of stolen property.

Defendant objected to the instructions given on the ground that they did not properly declare the law, or all of the law in the case. When asked if he had further instructions to offer, counsel for defendant said, ''No, your Honor, we are going to stand on our demurrer.''

The motion for new trial made the point that the trial court did not instruct on all the law in the case, but did not state any particular point on which there had been a failure to instruct.

I. The cases of State v. Richmond, 228 Mo. 362, and State v. Weatherman, 202 Mo. l. c. 9, seem when read superficially to read that the word ''felonious'' or ''feloniously'' shall be used in an instruction to describe the intent of the wrongdoer in taking and carrying away the thing stolen. But that is not the meaning of those opinions. The whole history of the subject in this court shows that such is not the case. Judge GANTT wrote the opinion in the Richmond case. He concurred in the opinion in State v. Campbell, 108 Mo. 611, in which it was said, ''They should have been told what would have constituted a felonious taking under the law; the taking must have been without right, and with the intention of converting the cow to a use other than that of the owner, without his consent.'' That learned Judge wrote the opinion in State v. Lackland, 136 Mo. l. c. 31, in which he approves an instruction given in State v. Martin, 28 Mo. 530, which did not contain the word ''felonious'' or ''feloniously,'' but did require that the taking and carrying away should be knowingly, without the consent of the owner, without any claim of right, and with intent to deprive the

*Instructions: Feloniously.*

owner of the property and convert it to defendant's own use, and defraud the owner.

Judge MACFARLANE said in State v. Scott, 109 Mo. l. c. 232, that "felonious" originally has no place in an instruction, and that when used it is most frequently but a repetition of what is expressed in other and simpler words. We conclude that the mere fact that the word "felonious" is not used does not invalidate the instruction. The question now arises, Does the instruction properly state the felonious intent? In State v. Spray, 174 Mo. 569, which was a robbery case, the instruction, so far as the larceny is concerned, was the same in all its elements as here. It was held sufficient.

It will be observed, from a reading of all the cases, that the element expressed by the words "without any claim of right" is one of the most important ones ordinarily in such an instruction. If such an element is in the instructions in this and the Spray cases, it must be found in the words "wrongfully" and "fraudulently." Without deciding whether it is so contained in those words, we hold that, even conceding that it is not, its absence does not in this case constitute reversible error.

**Without Claim of Right.**

The State's evidence was to the effect that defendant picked the pocket of the prosecuting witness in an expert manner; that he was described to the police by his victim and was taken on the hot trail with a part of the money on him. The balance of the money had been disposed of. No defense on the trial was made. There may be many other cases where the omission to require that the taking was "without any claim of right" would be fatal, but this is not one of them. The State's evidence and the defendant's conduct all show there was no claim of right either at the taking or at the trial. There may be a technical error in the instruction, but we are absolutely certain

State v. Ward.

that such error, if any, did not "prejudice the substantial rights of the defendant on the merits," and, therefore is not reversible.

II. Appellant claims that the evidence as to the identity of the money is
**Evidence:**
**Identity of Stolen** not sufficient and cites Burrill on Cir-
**Bank Notes.** cumstantial Evidence, p. 453, where it is said:

"Where all that can be proved concerning property found in the possession of a supposed thief, is that it is *of the same kind* as that which has been lost, this will not, in general, be deemed sufficient evidence of its having been feloniously obtained, and some proof of identity will be required. But where the fact is very recent, and the property consists of articles the identity of which is, from their nature, not capable of strict proof, the conclusion may be drawn that the property, being of the same kind, is, in fact, *the same,* unless the prisoner can prove the contrary. Thus, if a man be found coming out of another's barn, and, upon his being searched, corn [or grain] be found upon him, of the same kind as that in the barn, the fact is pregnant evidence of guilt; and cases have frequently occurred where persons employed in carrying sugar or other articles from ships and wharves, have been convicted of larceny upon evidence that they were detected with property of the same kind upon them, recently upon coming from such places; although the identity of the property, as belonging to such and such persons, could not otherwise be proved."

The money found on the defendant was not only the same denominations as that lost, but it had other evidences of identity. It was new and crisp; it was in national bank bills; it was money issued by the Third National Bank of Union City, Tenn., a place comparatively remote, so that fresh, crisp bills, or any bills of its national banks, were not supposed to be common

in the city of St. Louis. As those peculiarities of description increase in number the degree of certainty is multiplied. Then the defendant was at the spot where the prosecuting witness was deprived of his money, and the money was found on him within an hour and a half afterward. The evidence of identity was ample to take it to the jury.

III. It is said by appellant that there should have been an instruction on the subject of circumstantial evidence. In the motion for a new trial, the defendant made the point that the court did not instruct on all the law in the case, but at no time was the trial court's attention called specifically to the failure to instruct on circumstantial evidence.

*Instructions: All the Law of the Case: Appeal: Circumstantial Evidence.*

It was held in State v. Conway, 241 Mo. 271, that where the particular point on which the trial court has failed to instruct is not mentioned in the motion for a new trial it comes too late in this court. We are, however, in any event, bound to see that no injustice is done by such omission. We can see no way in which such an omission prejudiced the defendant. In addition to what is above said, the case did not depend alone on circumstantial evidence. The direct evidence in the case identifies the defendant as the party who pressed against Miles at the time the pocketbook was taken, and identifies the stolen money found on the defendant as that taken from Miles. Such being the case, the trial court was not required to instruct on circumstantial evidence.

Finding no reversible error in the record, the judgment is affirmed. *Williams, C.,* concurs.

PER CURIAM.—The foregoing opinion of Roy, C., is adopted as the opinion of the court. All concur. *Faris, J.,* in result.