## Stewart v. Commonwealth.

(Decided May 17, 1921.)

### Appeal from Graves Circuit Court.

1. Larceny—Felonious Intention Necessary to Commit—Effect of Intoxicating Liquors.—A felonious intention is necessary to commit the crime of larceny, and if one, is so overcome with the effect of alcoholic liquors, as not to be able to entertain an intention to steal, he cannot commit a larceny.

2. Larceny—Felonious Intention to Take and Carry Away Property.—The felonious intention, necessary to the taking and carrying away of property, to constitute larceny, is the wrongful purpose to convert the property to the taker's own use and benefit and to permanently deprive the owner of it, and is expressed in the term to steal.

3. Criminal Law—New Trial—Newly Discovered Evidence.—The newly discovered evidence, which will require the granting of a new trial must be important and calculated, under all the facts of a case to exert a decisive and controlling influence in affecting the result.

B. C. SEAY for appellant.

CHAS. I. DAWSON, Attorney General, and THOS. B. McGREGOR, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE HURT— Affirming.

The appellant, Turley Stewart, a young man, twenty years of age, was indicted for the crime of grand larceny, committed as alleged, by stealing an automobile of the value of $2,825.00 from one Covington, in Mayfield, and upon a trial, was found to be guilty by the verdict of the jury, and his punishment fixed at imprisonment for one year, in the penitentiary, and the court rendered a judgment, accordingly. The automobile was kept by the owner in a garage, from which it was discovered to be missing on the morning of the 7th of December. It was

taken out through the back door of the garage which had been forced by cutting a chain with which it was fastened. Stewart, whose home was near Paris, Tennessee, was in Mayfield, on the evening before the discovery of the theft, and an automobile of which he was the owner, was in the same garage, but, which remained after Covington's car was missing. He was seen to pass through Paris, Tennessee, at an early hour, on Tuesday morning, driving an automobile, and on Wednesday was arrested by an officer, near Stanley, Tennessee, and placed in jail at Brownsville. The stolen automobile was discovered to be the one which he was driving, when arrested, and in which he was proceeding in the direction of Memphis, Tenn. The license tags exhibiting the numbers of the car had been removed, but, upon inquiry by the officer, Stewart answered, that he had a receipt for them in his pocket. He likewise represented to the officer, that he had come from Nashville and that his home was in Norfolk, Va. When the owner of the car and the keeper of the garage were notified, they came to Brownsville and identified the car, in which was found a bolt cutter from the garage. Stewart when arrested, also, had in the car, an army rifle and in his pocket an automatic revolver. The army rifle was kept at his home, six miles from Paris, to which place he had gone on Monday night and procured it and evidently transported himself there in the stolen automobile. He claimed to have found the pistol in the car, and the owner deposed that there was a pistol in it. To the owner of the car, Stewart represented, that he got the car at Paris, Tennessee, at which place some one brought it to him. To the keeper of the garage, he represented, that some one, whom he did not know got the car out of the garage for him, but, that he did not take charge of it, until he crossed over into Tennessee; that he saw the man, who got the car, while at Paducah; he came from Paducah to Mayfield, on the train, but the other fellow made the journey, in a Ford car; they met in Mayfield; and when the car had been procured and they left Mayfield, he drove the Ford car and went in front, and the other fellow followed with the stolen car; and this was done according to a plan agreed upon by them, while in Paducah. He, further, stated, that he did not know why he took the car, unless, it was just because, he was "broke" and owed everybody and he thought that he would just take the car and leave. Stewart denied making any of the above stated incriminating statements. He

denied stealing the car, and relied for a defense upon the fact, as claimed by him that he was so overcome by the effects of intoxicating liquors that he did not know anything, that transpired, with reference to taking the car, and was unable to account for the fact, that he found himself driving it, on Wednesday, and then realized for the first time, that it was not his. He claimed, that while passing through Paducah, on his way from his home to Mayfield, he was accosted by an acquaintance named Tom Kelch, who was a "bootlegger," and who sought to procure him to go to Memphis, and bring back a quantity of liquor to Mayfield, but, that he refused. When he arrived at Mayfield, Kelch was, also, there and again sought to procure him to make the journey to Memphis for the liquor, but, that he again declined, but, that evening at Kelch's invitation, he drank several drams of liquor and became greatly intoxicated, so much so, that he knew of nothing that thereafter transpired, except a faint memory of Kelch assisting him from the Ford car, into the stolen one, at some place, of which he could not remember, and saying to him, that he had secured a car for him to make the trip to Memphis, with. He gives no account of what became of Kelch or where he parted company with him, or, although incapable of memory or any knowledge of his actions of why he was enabled to drive a car, in the night from Mayfield to his home, secure his gun, and then why he proceeded through Paris, and Milan and Stanley, and on in the direction of Memphis, until apprehended. His statements in reference to his condition as to sobriety, he was corroborated to some extent by others, and it is proper to say, that the witnesses, who testified as to his previous character for honesty, deposed that it was good.

The grounds relied upon by appellant for a reversal of the judgment of his conviction are:

(1) The court erred in instructing the jury.

(2) Incompetent evidence was admitted over his objection.

(3) The misconduct of the Commonwealth's attorney.

(4) The court abused its discretion in denying to him a new trial.

These grounds will be considered in their order, as stated.

The instruction complained of is the second one given by the court to the jury. It in substance directed the jury, that although it might believe from the evidence be-

yond a reasonable doubt that the appellant took and carried away the car, yet, if it should further believe from the evidence, "that at the time the defendant was so drunk that he did not have the intention of stealing the automobile," it should find him not guilty. It was contended that this instruction does not sufficiently express the right of appellant, in that it should have predicated his right to an acquittal upon the ground, that he was incapable from drunkenness to entertain a "felonious intention" in taking and carrying away the car. Larceny is one of the crimes for the commission of which a felonious intention is necessary. Mearns v. Com., 164 Ky. 213; Brennan v. Com., 169 Ky. 815; Allen v. Com., 144 Ky. 222. The felonious intention necessary to constitute larceny, is the taking and carrying away the property of another, with the wrongful purpose of appropriating it to one's benefit and of permanently depriving the owner of it. This intention is correctly stated in the use of the term, steal. If, one takes property without the intention to steal it, he does not commit larceny. Hence the criticism of the instruction is without merit.

(b) The admission of the evidence complained of consisted in permitting the owner of the stolen car while a witness to testify that the father of appellant had said to him that when he had had the repairs upon the car, which were made necessary from the use of it by appellant, completed, to send him the bill, and he would pay it, and that in satisfaction of the damages, he was paid by the father of appellant, the sum of $860.00. As appellant was not shown to have had any connection or even knowledge of this transaction, there could be no doubt of the incompetency of the testimony concerning it, but, as appellant's possession and use of the car was admitted, and his liability for any damages to it existed, whether he had or had not stolen it, to prove that the owner had been made whole on account of damages to the car does not appear to have been prejudicial to his substantial rights, but, rather tended to ameliorate the consequences of the offense. If whether the appellant had taken and carried away the car had been an issue in the case the testimony would have probably been prejudicial. Under section 340 of the Criminal Code, a judgment of conviction should not be reversed on account of an error, which does not affect the substantial rights of the accused, when the entire record is considered.

(c) The misconduct of the Commonwealth's attorney complained of consists in the use of certain alleged improper language by him, but as set out in the bill of exceptions, it is of a character too vague, indefinite and uncertain to base the reversal of the result of an otherwise proper trial upon, as it does not appear from the bill of exceptions, when or where, or who made use of the language complained of, or whether by the counsel of one party or the other.

(d) The newly discovered evidence relied upon for a new trial was such as was expected to be made by Chandler, Harvett and Stephens. The affidavit of Stephens shows, that he would prove that there was such a man as Tom Kelch, who was a "bootlegger," but, the fact was proven by several witnesses upon the trial, and denied by no one, although several witnesses deposed to never having heard of him. Hence, the testimony of Stephens, if made would be neither important nor controlling. The statements in the affidavits of Chandler and Harvett are to the effect, that on the night of December 6, which was the night the automobile was stolen, they while journeying to Mayfield, between Sedalia and the latter place, came upon two automobiles in the road, with which there were two men, neither of whom did they know, but, that one was assisting the other who appeared to be sick or drunk, from a Ford car into a Hudson car—the stolen car was of the latter type. Since they have learned, that the sick or drunk man was the appellant. This evidence when given would be corroborative of that of appellant, who deposes, that, at some place, Kelch said to him, that he had the car for him to go to Memphis in and assisted him from the Ford into the stolen car, and it would also, be corroborative of the testimony of the garage keeper, to the effect, that appellant related to him, that he drove the Ford car, while Kelch, whose name he did not then call drove behind him in the stolen car until they crossed the Tennessee line, and it would be very contradictory of appellant's testimony, that he was too drunk to entertain an intention to steal, while yet perfectly able to drive unassisted an automobile, at night, over country roads, without mishap for many miles. It would not militate, however, against the statement of appellant, as related by garage keeper, that he and Kelch had planned the stealing at Paducah, before arriving at Mayfield, nor would it explain away to any extent, the fact that appellant, although denying any cooperation with Kelch, was

proceeding, toward Memphis, where the liquor was which Kelch wanted him to bring to Mayfield, and where he was proceeding, as he deposed, to take the car to Kelch, when he was arrested, although he did not offer any explanation as to why he thought he would find Kelch at Memphis. Evidence which would merely tend to prove, that Kelch took the stolen car from the garage and drove it for several miles, and then turned it over to appellant according to the arrangement, while appellant as a part of the plan assisted by driving Kelch's car, would not be decisive or control the result of a trial in appellant's favor. A motion for a new trial because of newly discovered evidence is a matter which rests in the sound discretion of the trial court, and will not be granted, unless the new evidence is important and of such unerring a character, when the facts of the case are considered, as is calculated to exert a decisive influence upon the result of a trial. Brennan v. Com., 169 Ky. 823; Mercer v. Mercer, 87 Ky. 21; Torian v. Terrell, 122 Ky. 745; Mason v. Mason, 5 Bush 187.

The judgment is therefore affirmed.