### ELMER McDANIELS v. STATE.

No. 10173.   June 16, 1943.
(139 P. 2d 191.)

Carl C. Weaver, of Pawhuska, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Jess L. Pullen, Asst. Atty. Gen., and Sim T. Carman, Co. Atty., of Pawhuska, for defendant in error.

BAREFOOT, J. Defendant, Elmer McDaniels, was charged jointly with Charley Beck in the district court of Osage county, Okla., with the crime of larceny of live-stock, to-wit: one gray mare and one iron gray horse; was tried, convicted and sentenced to serve three years in the State Penitentiary, and has appealed.

This case grew out of the theft of the above described property from Oscar Miller, in Osage county, on or about the 1st day of December, 1940.

For a reversal of the case, it is contended, (1) that there was a material variance in the information and the evidence offered by the state; (2) that the court erred in giving instruction No. 7; and (3) that the court erred in refusing to give a certain requested instruction, and in giving instruction No. 5.

The first assignment of error is based upon the fact that the evidence of the state was that the horses alleged to have been stolen were not the property of Oscar Miller, but were owned by his mother. Oscar Miller had traded a cow belonging to his mother for the two horses, had possession of them at the time they were stolen, was using them for the purpose of farming, and the evidence showed that he not only had possession of the horses but that he had the right to dispose of them if he so desired.

It is conceded by the defendant in his brief that this question has been decided adversely to his contention by this court in the case of Butler v. State, 60 Okla. Cr. 188, 62 P. 2d 662. The second and third paragraphs of the syllabus in that case are as follows:

"The actual status of the legal title to stolen property is no concern of the thief; so far as he is concerned, one may be taken as the owner who is in possession of the property and whose possession was unlawfully disturbed by the taking.

"In a prosecution for larceny of livestock, the name of the owner of the property stolen is only required to identify the transaction, so that the defendant, by proper pleading, may protect himself against another prosecution for the same offense."

The second assignment of error has reference to an instruction based upon the law as stated in the Butler Case. From what has been stated, there was no error in giving instruction No. 7. The fact that the legal title to the property was in the mother of Oscar Miller, did not excuse the defendant when it was proven that Oscar Miller had possession and control of the horses at the time of the taking.

The third and fourth assignments of error are that the court erred in refusing to give requested instruction No. 1, which was as follows:

"You are further instructed that the felonious intent is one of the material allegations of the crime of larceny of livestock, as charged in the information, and the burden is on the state to prove that element to your satisfaction beyond a reasonable doubt."

And in the giving of instruction No. 5, which was as follows:

"You are instructed that larceny is the taking of personal property, accomplished by fraud, or stealth, with the intent to deprive another thereof.

"In this connection you are further told that if you find from the evidence, facts and circumstances in proof, beyond a reasonable doubt, that in the county of Osage,

State of Oklahoma, on or about the 1st day of December, 1940, the defendant Elmer McDaniels, while acting together with Charley Beck, did wrongfully, unlawfully and stealthily take, steal and carry away the property described in the information with the intent then and there existing in the mind of said Elmer McDaniels and Charley Beck to deprive the owner permanently thereof, then and under such circumstances, it would be your duty to find the defendant guilty as charged in the information.

"Unless you should so find, it would be your duty to find the defendant not guilty."

These two assignments of error may be considered together.

The general statute upon larceny in this state is section 2253, O.S. 1931, Tit. 21 O.S.A. 1941 § 1701, which is as follows:

"Larceny is the taking of personal property accomplished by fraud or stealth, and with intent to deprive another thereof."

The statute which deals with larceny of domestic animals is section 2267, O.S. 1931, Tit. 21 O.S.A. 1941 §1716, and is as follows:

"Any person in this state who shall steal any horse, jackass, jennet, mule, cow, or hog, shall be guilty of a felony and upon conviction shall be punished by confinement in the State Penitentiary for a term of not less than three years, nor more than ten years; and any person in this State who shall steal any sheep, or goat, shall be guilty of a felony and upon conviction therefor shall be punished by confinement in the State Penitentiary for a term not less than six months, nor more than three years. The word 'horse' as used in this act, shall include all animals of the equine species and the word 'cow' shall include all animals of the bovine species."

The information in this case was filed under the section dealing with the larceny of domestic animals.

This court has had occasion to consider the construction of the statutes above quoted in relation to each other, and has definitely decided that they are separate and distinct; that neither depends upon the other, and that each should be applied as the facts justify; that the Legislature has modified the general statute with reference to larceny as applied by the common law, so that the taking of personal property accomplished by fraud and stealth and with intent to deprive another thereof is larceny, regardless of whether or not it was taken for the purpose of depriving the owner thereof, and for the purpose of converting it to the use of the taker. Thus while the statute has broadened the meaning of the term "larceny," the words "steal" and "stealthily" have not been defined by the statute, and must be determined by their common law meaning. Under the statute of larceny of domestic animals, it will be noted that the word "steal" is used. Where the word "steal" is used, it means to take and carry away property of another with the felonious intent to deprive the owner thereof, and to appropriate the same to one's own use. It must be noted that when the word "steal" is used either in the information or in an instruction, that it carries with it the meaning that the property converted is by felonious intent.

In the early case of Hughes v. Territory, 8 Okla. 28, 56 P. 708, Judge Burwell of the Territorial Supreme Court gave at length the history of the passage of the two statutes above quoted. Since that time the statute has been amended, but only in minor details and with reference to increasing the minimum and maximum punishment imposed.

This court, in an early opinion by Judge Doyle in the case Crowell v. State, 6 Okla. Cr. 148, 117 P. 883, 885, quoted from the Hughes Case and said:

"The decision in this case is approved and followed by this court."

It is further said:

"When a prosecution is predicated upon section 2606, to support a conviction, the ownership of the animals stolen must be alleged and proved, and it is necessary to allege and prove a felonious intent on the part of the taker to deprive the owner thereof and to convert the same to his (the taker's) own use, which specific proof is not necessary to support a conviction under the general larceny statute. That was done in this case. The allegation of value in the information is not material, and may be rejected as mere surplusage, which does no harm. But one offense—the larceny of live stock, as defined by section 2606—is charged in the information, and the objection to the verdict on the ground that it is too general is not well taken." See, also, the following cases: Underwood v. State, 23 Okla. Cr. 119, 212 P. 1010; Smith v. State, 10 Okla. Cr. 544, 139 P. 709; Bayless v. State, 9 Okla. Cr. 27, 130 P. 520; Cope v. State, 23 Okla. Cr. 161, 213 P. 753; Dunn v. State, 14 Okla. Cr. 452, 172 P. 463; Stanley v. State, 61 Okla. Cr. 382, 69 P. 2d 398; Hughes v. State, 61 Okla. Cr. 40, 65 P. 2d 544; Richardson v. State, 76 Okla. Cr. 101, 134 P. 2d 375.

It is the contention of the defendant that the case of Sneed v. State, 61 Okla. Cr. 96, 65 P. 2d 1245, 1248, is decisive of the issues involved in this case.

It is true that the same requested instruction was asked in both cases. However, the instructions given by the court are not identical. The facts in the Sneed Case did not justify an affirmance of the judgment and sentence, as the court stated:

"Upon a careful examination, our conclusion is that the evidence is insufficient to sustain the conviction."

The facts in that case justified this assertion, and while the court refers to the instruction given, the main reason for reversing the case was the insufficiency of the evidence. Here, the record amply justifies the conviction of the defendant, as will be hereafter shown.

In 36 Corpus Juris, 931, § 547, it is stated:

"The omission from an instruction of the words 'felonious' or 'fraudulent' is not a fatal defect, if words of equivalent meaning are used, or if the elements of a felonious intent are otherwise sufficiently expressed. The use of the word 'steal' in an instruction has been held to import sufficiently a felonious intent."

In the case of Allen v. Commonwealth, 144 Ky. 222, 137 S.W. 1060, it is said:

"Appellant claims the lower court erred in instructing the jury. His complaint is confined to the first instruction, which is as follows: 'If the jury believe from the evidence beyond a reasonable doubt that the defendant, Bascom Allen, in this county and within 12 months before finding the indictment, did take, steal, and carry away from the possession of Bud Coats two chickens of value, the property of said Coats, with the intent and purpose to convert same to his own use and deprive the owner of the same, they will find him guilty as charged in the indictment, and fix his punishment at confinement in the jail not less than one month and not more than twelve months.' The complaint is that the court did not require the jury to believe from the evidence beyond a reasonable doubt that appellant 'feloniously' took the chickens, with the purpose of depriving the owner of them and to convert them to his own use, etc. The court did require the jury to believe that appellant did take, steal, and carry the chickens away, with the intention and purpose of converting them to his own use and thereby deprive the owner of them, which, if true, amounted to a felonious taking.

Brooks v. Commonwealth, 28 S.W. 148, 16 Ky. Law Rep. 356. It was necessary to charge in the indictment that appellant feloniously took the chickens, but it was not necessary to use the word 'felonious' in the instructions; for, if the jury believed as the court told them they must believe, they necessarily believed that he acted feloniously."

In the case of Philamalee v. State, 58 Neb. 320, 78 N. W. 625, it is said:

"While an instruction defining 'larceny' is erroneous which omits to charge that the taking must be with a felonious intent, the instruction need not use the word 'felonious,' if words of equivalent import or meaning are employed."

. See, also, the following cases: State v. Minor, 106 Iowa 642, 77 N.W. 330; State v. Ward, 261 Mo. 149, 168 S.W. 940; State v. Speritus, 191 Mo. 24, 90 S.W. 459; State v. Yates, 159 Mo. 525, 60 S.W. 1051; People v. Tomlinson, 102 Cal. 19, 36 P. 506; Stewart v. Commonwealth, 191 Ky. 538, 230 S.W. 950; Ashlock v. State, 16 Tex. App. 13; State v. Tipton, 307 Mo. 500, 271 S. W. 55; State v. Frost, Mo. Sup., 289 S.W. 895; Ryal v. State, 16 Okla. Cr. 266, 182 P. 253.

The case of Lockhart v. State, 10 Okla. Cr. 582, 139 P. 1156, 1158, is in conflict with the rule above announced, but in reading that case, it will be noted that the court said:

"This court is of the opinion that the evidence introduced by the state is insufficient to support a conviction of the offense charged." The record bears out this statement, and the court also reversed this case upon another erroneous instruction which required the jury to believe from "the evidence that he is innocent before finding him not guilty, thus in effect depriving defendant of the benefit

of the presumption of innocence until the contrary is proven."

While there is some conflict of authority upon this proposition, much of the conflict is by reason of the peculiar terms of the different statutes. From a careful reading of many cases, we have come to the conclusion that under statutes which have the word "steal," and this term is used in the instruction, that it carries with it a meaning that the larceny must have been with felonious intent. It will be noted that the statute under which defendant was charged does not mention the word "felonious," but as noted above the word "steal" under its common law meaning implies that term.

We also call attention to section 3206, O.S. 1931, Tit. 22, O.S.A. 1941 § 1068:

"No judgment shall be set aside or new trial granted by any appellate court of this State in any case, civil or criminal, on the ground of misdirection of the jury or the improper admission or rejection of evidence, or as to error in any matter of pleading or procedure, unless, in the opinion of the court to which application is made, after an examination of the entire record, it appears that the error complained of has probably resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right."

This court has often held in construing this statute that although an instruction may be erroneous, the case will not be reversed for this reason unless upon an examination of the entire record it is found that the defendant was prejudiced by the instruction given, and that the record as a whole did not reveal the guilt of the defendant. Martin v. State, 46 Okla. Cr. 411, 287 P. 424, 85 A.L.R. 512; Wilkins v. State, 70 Okla. Cr. 1, 104 P. 2d 289; Burns v. State, 72 Okla. Cr. 409, 117 P. 2d 144.

The record in this case discloses that the prosecuting witness, Oscar Miller, was in possession of one gray horse about four years old, and one gray mare, which were the property of his mother, but he was in possession of the same with her consent, and making a crop at his home in Osage county; that he had traded a cow which belonged to his mother for the two horses; that he last saw the horses in his pasture about dark on the night of December 1, 1940; that the next morning his hired hand could not find them; that they were gone and had been stolen. Upon an examination he found where they had been taken from his pasture, and he notified the officers in Tulsa county, near where he lived. A deputy sheriff, John Jones, located the horses in Creek county, and within a distance of about ten miles from the home of Oscar Miller. The four year old horse was at the home of a Mr. Stephens, and the gray mare was at the home of Dick Prather, in Creek county, a few miles distance from the home of Mr. Stephens. Both Mr. Stephens and Mr. Prather were personally acquainted with the defendant Elmer McDaniels, and both testified that they bought the horses from him about the 3rd of December, 1940, and that he brought them to their respective homes in a truck. Defendant told Mr. Stephens that he bought the horse sold to him from someone in Vinita, and told Mr. Prather he bought the one he sold him from someone at Chelsea.

Mr. Miller, in company with Deputy Sheriff Jones, saw both the horses at the homes of Mr. Stephens and Mr. Prather, and identified them as being his horses. He took the four-year old horse from Mr. Stephens' home to his own place, and the next day after he saw the gray mare at Mr. Prather's home and before he could go and get her, someone unknown to him brought her home and placed her on his premises.

Officer Jones testified that he had a conversation with the defendant after he had located the horses in Creek county, and told him that he was being accused of stealing them. He also testified to conversations which he had with the defendant with reference to the stolen horses. He said:

"A. Well, he said he did not get them in Osage county. He said some fellows stole them, and loaded them in his truck up there on the county line, but it was on the south side of the highway, which would have put it in Tulsa county."

The defendant did not take the witness stand in his own behalf, but there was introduced in evidence by the state a written statement made by him while in jail, after his arrest. This statement was taken at his request by the county attorney of Osage county, and in the presence of his attorney. It was a voluntary statement, and it is unnecessary to give the details thereof. He made many statements therein with reference to the stealing of the property, but attempted to lay the blame on others. He could only give the names of some of the parties, and they were not present at the trial. He claimed they had stolen the horses and placed them in his truck. This statement clearly revealed the guilt of the defendant in the taking of the horses, and he admitted selling them to Mr. Stephens and Mr. Prather. The jury evidently did not believe his statement that he purchased the horses from some other party in Tulsa county.

After a careful consideration of this record, we are of the opinion that no error appears therein that is not harmless, and that the defendant was not prejudiced in any way, and that the judgment and sentence of the district court of Osage county should be affirmed. It is so ordered.

JONES, P. J., and DOYLE, J., concur.