**Robert DARNELL, Plaintiff in Error,**

v.

**The STATE of Oklahoma, Defendant in Error.**

**No. A-13081.**

Court of Criminal Appeals of Oklahoma.

Feb. 21, 1962.

Charles Pope, Tulsa, for plaintiff in error.
Mac Q. Williamson, Atty. Gen., Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

BRETT, Judge.

This is an appeal by Robert Darnell from a conviction for larceny of an automobile, allegedly stolen from one Howard P. Perry on May 13, 1960 in Tulsa County, Oklahoma.

The charge was filed by information in the district court of Tulsa County, Oklahoma, on July 29, 1960. The case was tried to a jury, the defendant convicted and his punishment set at five years in the State Penitentiary. Judgment and sentence was entered accordingly, from which this appeal has been perfected.

The first contention of the defendant is that the evidence was insufficient to support the conviction, and the trial court erred in not sustaining the motion of defendant for a directed verdict.

The evidence in support of the charge is that Howard P. Perry of Tulsa was the owner of a black sport model Chevrolet automobile. On May 12, 1960 he parked the automobile in the driveway at his home,

4137 East 37th Place, in Tulsa, about 11 P.M. Early the morning of May 13, 1960 he was called by the highway patrol relative to his ownership of the automobile. He looked out the window of his home and his car was gone from his driveway. He testified he gave no one permission to move it, or use it. He further related that only he and his wife had keys to the automobile, and Mrs. Perry was in the house all the time with Mr. Perry when the car was stolen.

About 8 o'clock the morning of May 13 Mr. Perry saw and identified the automobile at the police parking yard where it had been moved after its recovery by the police. When the car was identified by him, the spare tire, the tools and the back seat were missing. All these things were in the car when it was stolen. Some time the next week he recovered the back seat from the patrol. He identified the tag number of his car and the serial number as those on his title to the automobile. Robert Darnell was never given permission to drive the automobile.

Trooper Harberts of the Highway Patrol testified in substance as follows: That at about 2:30 A.M. on May 13, 1960 he was patrolling in the eastern part of Tulsa County. He first saw the Perry automobile on Eleventh Street, travelling east. Later, about 3:30 A.M. he saw the Chevrolet automobile and its two occupants with lights out coming out of the driveway behind a grocery store. He tried to block the driveway, but before he could do so they accelerated the speed of the car and rammed his car on the left front side, breaking the wheel and disabling the patrol car. He reached for his shot gun but could not use it because of endangering the lives of others. He got help and went in search of the automobile that had rammed him. A few minutes later it was found abandoned a short distance north of the collision, with the back seat missing. It was just about day light.

The officers could see from tracks in an adjacent field covered with grass about a foot high, wet with a heavy dew, the direction the occupants of that automobile had taken in their flight. They followed the tracks, eventually to a private house. They were then tracked back of a barn at the rear of the house, where they found the seat of a car that was later identified as the one taken from the Perry automobile. There were new tires stacked in the barn. The officers then checked out the house and found the defendant and his associate hiding in the attic, with their trousers from the knees down soaking wet. This house was Darnell's home.

The defendant Darnell was taken to police headquarters and interrogated. There he told officer Hobbs that he had a machine that could make a master key for any General Motors product, and especially 1960 Chevrolets. He told how he had made a key with which he stole the Perry automobile.

Officer Hobbs identified the car that rammed him, as the Perry car. He identified both Darnell and his associate, Jones, as the men he saw coming out of the driveway when they rammed his car. He testified Jones was driving the stolen automobile.

The missing seat found at Darnell's home was positively identified by Mr. Perry as that belonging to his automobile.

After the foregoing evidence the defendant moved for a directed verdict, which the court overruled, with an exception. We are of the opinion the evidence was sufficient to withstand the motion.

The defendant's wife sought to establish an alibi for her husband, but it fails because she first told the officer who came to the house that her husband had not been at home all night. Then after making that statement to the officers, she testified on the stand that he was there in bed. She said that her husband came home about 6:30 P.M. and was there until about 10:30 when he went to the market for her, returned and after watching a late show they retired and he was there the remainder of the night. Her explanation of why her husband and Jones were up in the attic

when the officers returned between 7:30 and 8 A.M. was most unconvincing. She said he and Jones went up there, "just to see, I guess." Her denial of his trousers being wet was equally as weak.

Robert Darnell testified in his own behalf. He denied being a party to the car theft. He explained his presence in the attic with Jones as being because he wanted to get a good position where he could see what was going on around his place. They went to the attic through a scuttle hold located in a closet, which was too small for the officers to get through to the attic, and notwithstanding he was called to come down from the attic by men too large to get through the attic scuttle hold, he did not know anything about it, he related. It appears there was a Curtiss car key machine in the basement with which car keys could be produced, especially for General Motors cars, but he said he didn't know anything about it. He said it was there when he moved in, but he did admit there were numerous hand tools that belonged to him in the basement. He said he did not know why Jones came to his house and drank coffee at 4 A.M., because he didn't ask him. He was no more sure of these things than he was the kind of automobile he had on May 13. He said, "Oh, let's see, I had a 1951 Oldsmobile 98, I believe I had a Buick at that time. I am not sure." Such inconsistencies and apparent untruths in his testimony made it most unbelievable.

■ In any event, there was a conflict in the evidence which was the sole province of the jury to weigh and determine. Under these conditions the determination of the jury is binding on this Court. We have many times held that where the evidence is conflicting and it reasonably tends to support the jury's findings, that finding is binding on the Court. Sadler v. State, 84 Okl.Cr. 97, 179 P.2d 479.

■ The circumstance and identification of the defendant herein undeniably established his connection with the alleged crime. The presumption arising from the possession of stolen property is one of fact, and not of law, and possession of property recently stolen, and unexplained, is a circumstance to be considered and given such weight by the jury as it may see fit. McDonald v. State, 59 Okl.Cr. 318, 58 P.2d 345; Patton v. State, 54 Okl.Cr. 393, 22 P. 2d 116. Whether the explanation of the possession of a recently stolen automobile is reasonable is a question of fact for the jury to determine. Chrisman v. State, 22 Okl.Cr. 52, 209 P. 656; Ballard v. State, 68 Okl.Cr. 39, 95 P.2d 239.

The defendant complains of the court's instructions, and excepted to each and all of them, except the ninth and last. He did not submit any requested instructions. We have examined the instructions given and find that they cover the issues made by the pleadings and evidence. Such special issues as circumstantial evidence, the explanation of possession of recently stolen property, and alibi were correctly given. In addition thereto, the trial judge limited the consideration of a former forgery conviction, and admitted by defendant, as going only to the weight and credit to be accorded defendant's testimony, and not as evidence of his guilt of the offense of larceny of the automobile involved in the specific charge. The court also amply covered "reasonable doubt" and other phases of the case, in stock instructions.

■■ Defendant specifically complains of instruction No. 2, defining the term "steal". We find nothing wrong with the definition. The one given by the trial court was substantially approved in Pearce v. State, 33 Okl.Cr. 273, 243 P. 761, though the court said such a definition of "to steal" was not necessary, because "to steal" ordinarily needs no explanation. But we know of no case holding it is error to define "steal". The cases cited by the defendant are all contrary to his contention. For example, in the case of McDaniels v. State, 77 Okl.Cr. 84, 139 P.2d 191 cited by the defendant, a larceny case, this Court said: "Where the word 'steal' is used it means to take and carry away the property of

another with the felonious intent to deprive the owner thereof, and to appropriate the same to one's own use." That is precisely, though not verbatim, what the court in this case told the jury.

■ The defendant's last proposition is that the court erred in giving instruction No 2A, defining all persons who are concerned in the commission of a crime, whether felony or a misdemeanor, and whether they directly commit the act constituting the offense, or aid or abet in its commission, though not present, as principals. This instruction was approved in Huckabe v. State, 53 Okl.Cr. 291, 11 P.2d 212. It was appropriate herein for the evidence was sufficient to support the jury's belief that the defendant made the key that unlocked the stolen car at the time of the taking.

Under all of the foregoing, the judgment and sentence in this case is affirmed.

NIX, P. J., and BUSSEY, J., concur.