Lake, Ch. J.
The first question that we will notice is whether or not the orders upon which the action was brought so partake of the character of negotiable instruments as to estop the school district, as against a bona fide holder for value, from availing itself of any defense which it would have had in an action brought by the payee. That the indorsee of such orders is in no better situation than the payee, and takes them subject to all their infirmities, such as ultra vires, want, or failure of consideration, is too well settled by the authorities to be questioned. In this respect they have none of the-elements of commercial paper. Smith v. Inhabitants of Cheshire, 13 Gray, 318. Emery v. Maryville, 56 Me., 315.
This being the law governing the transfer of these orders, how stands the case ? Do the facts established by the evidence justify a recovery against the district? The evidence shows:
I. That on the fifteenth day of June, 1872, the district board entered into a contract with Timothy ITurley, and H. Allum, by which the latter agreed, for the consideration of four hundred and seventy-five dollars, to build a school house for said district, and have it completed by the first day of November of the same year. No express authority, or direction, was given to the board by the district to proceed with the work of building the house, or to let the contract therefor. The board appears to have assumed that its authority to do so was ample from the mere fact, that at a district meeting held on the thirteenth day of April of that year a tax of five mills.-.on the dollar was voted, for the purpose of building a school house. But such was not the case.
*362 II. At the same time, the board agreed to issue orders upon the district treasurer for the whole amount of the contract price, and deliver the same to the contractors, to enable them to go on with the work. This was done, and a bond taken back to secure the faithful performance of the contract. The orders were presented to the treasurer for payment, who indorsed his acceptance thereon, but did not pay them for want of funds.
III. The orders upon which this action was brought are a portion of those so issued.
IY. The contractors wholly failed to perform their contract, and the school house has not been built. The orders were negotiated the day following their acceptance.
On these facts we are well satisfied that the school district is not liable on these orders. There was no authority for the school board to issue them when they did, nor for the treasurer to accept them. These district boards are created by statute, with certain well defined, but very limited powers. They can act, so as to bind the district, only within the limits which the legislature has fixed; beyond this their acts are void. It will be observed that the incipient step toward raising the money with which to erect this school house, viz.: the voting of the five mill tax, had been taken only a few weeks before the contract was let. Not a single dollar of the levy could be realized until nearly a year from that time. We think it is clear, that the legislature intended that contracts for the erection of school houses should be made with reference to money on hand for that purpose. Certainly, there' is no authority anywhere given to the district board to pledge the credit of the district, to draw and accept orders on a fund which the district has proposed, but not yet raised, for the purpose of raising the means necessary to build a school house. It was never *363 contemplated that contracts for the erection of school houses should be let on the basis of what orders so issued might happen to be worth, or would bring in the market, as in this case, only seventy-five cents on the dollar. In case the delay necessarily occasioned in the raising of money by taxation, would be too great, it is provided in section thirty of the school law, that the “ school district shall have power and authority to borrow money to pay for the sites for school houses and to erect buildings thereon, and to furnish the same by a vote of a majority of the qualified voters of said district present at any annual, or special meeting.”
But, in whichever way the building fund is raised, it ■is entirely beyond the control of the district board, except for safe keeping, until the electors of the district, legally assembled, shall give directions as to how it shall be expended, and by whom, whether by the district board, or by a “ building committee,” as provided in sections twenty-nine and fifty-eight of the general school law. In this case the action of the board was without the shadow of authority, and absolutely void. It is a fundamental principle of law, that, in dealing with these quasi corporations, or with their agents, a person must take notice, at his peril, of the nature and extent of their authority. The legislature has set the proper bounds within which they may act, but beyond which they cannot go. This is in the public law, and must be heeded.
"We conclude, therefore, that these orders were void in the hands of the payees, and that they are equally so in the hands of the indorsee. -For these reasons the judgment of the district court must be reversed, and a new trial awarded.
Judgment accordingly.