## STATE OF NEBRASKA V. JOHN ARNOLD.

[FILED JANUARY 2, 1891.]

**Statutes:** AMENDMENT: CONSTITUTIONALITY: LARCENY FROM
PERSON. The act entitled "An act defining the crime of larceny
from the person and providing a penalty therefor," approved
March 14, 1887, was not, nor was it intended to be, an amend-
ment of section 114, or section 119, of the Criminal Code, or of
any statute then in force. Its purpose was to define a new crime
and provide a penalty therefor. It is not inimical to the pro-
visions of section 11 of article 3 of the constitution of this state.

EXCEPTIONS from the district court for Douglas county,
HOPEWELL, J., presiding. Filed under the provisions of
sec. 515, Criminal Code.

*T. J. Mahoney, County Attorney,* for plaintiff in error,
cited: *Smails v. White,* 4 Neb., 353; *Jones v. Davis,* 6 Id.,
33; *State v. Page,* 12 Id., 386.

*H. C. Brome, contra,* cited: *Sovereign v. State,* 7 Neb.,
409.

COBB, CH. J.

It appears from the record that at the May term of the
district court sitting in and for the county of Douglas, in
the year 1889, before the Hon. M. R. Hopewell, district
judge, Timothy J. Mahoney, county attorney, presented and
filed an information in due form, in which he gave the
said court to know and be informed "That on the 27th
day of May, in the year of our Lord one thousand eight
hundred and eighty-nine, John Arnold, late of the county
of Douglas aforesaid, in the county of Douglas and state
of Nebraska aforesaid, then and there being, from the per-
son of one William Bernard unlawfully and feloniously
did steal, take, and carry away two dollars, lawful money

of the United States, of the value of two dollars, the property of William Bernard, without putting him, the said William Bernard, in fear by the use of threats, force, or violence, contrary to the form of the statute."

Whereupon the said John Arnold, being arrested and brought before the said court to answer the said charge and information, presented and filed therein a motion "that the said information be quashed; that the order theretofore issued by said court, committing him, the said John Arnold, to the common jail of said county be vacated, and that said defendant be discharged from custody for the following reasons:

"1. The said district court has no jurisdiction of said offense, and the said county attorney no authority to file an information against said defendant, for that the offense for which said defendant is held to await trial in said court is one respecting which a justice of the peace or other magistrate within and for the county of Douglas has full authority and power to hear and finally determine."

Which motion was by the said court allowed, the said information quashed, and the said defendant discharged. To which the said county attorney, on behalf of the state, duly excepted, and notified the said judge in writing of his intention to apply to the supreme court for permission to file a bill of exceptions in the said cause with the clerk thereof for the decision of said court upon the points presented therein. And thereupon the said judge made an order in said cause, appointing H. C. Brome, Esq., to argue the case in the supreme court in case the said application of the county attorney should be allowed. And which application was made in this court and allowed; and upon argument by counsel and briefs filed the cause was submitted to the court upon the following assignments of error:

1. The court erred in sustaining the motion of defendant to quash the information.

2. The court erred in discharging the said defendant from custody.

3. The court erred in not overruling the said motion to quash the information.

4. The court erred in entering judgment of dismissal in favor of the defendant.

5. Judgment ought to have been in favor of the plaintiff instead of the defendant.

In considering the two sides of the question of law upon which the case turns, we will examine that presented by Mr. Brome on the part of the defendant in error first. The motion to quash the information was decided by the district court upon the theory that the act upon which the information was presented was contrary to the provisions of section 11, article 3, of the constitution. The said act was approved March 14, 1887. I here copy it at length:

"Section 1. Every person who steals property of any value by taking the same from the person of another without putting said person in fear by threats or the use of force and violence, shall be deemed guilty of grand larceny, and shall, upon conviction thereof, be punished by confinement in the penitentiary for not less than one nor more than seven years."

Section 11 of article 3 of the constitution contains the following provision: "And no law shall be amended unless the new act contains the section or sections so amended, and the section or sections so amended shall be repealed."

The theory of the judgment of the court below is that the act of 1887, above quoted, was intended by the legislature as an amendment of section 114 of the Criminal Code, defining and fixing a penalty and punishment for grand larceny, or of section 119, which defines and prescribes a punishment for petit larceny, or of both of said sections. If this theory is correct, the conclusion reached by that court must also be admitted, as neither of the sections referred to are contained in the new act, or repealed.

But it is the contention of the plaintiff in error that it was not the intention of the legislature, in the passage of the said act, to amend either of the said sections of the Criminal Code; that it is an act complete in itself, and whatever effect or operation it has or may have upon the said sections of the Criminal Code, or any prior act or statute, is not within the mischief of the constitutional provision as stated in the opinion of the court in the case of *Smails v. White*, 4 Neb., 357.

The case of *Sovereign v. State*, 7 Id., 411, is cited by counsel for defendant in error as the case followed by the district court in the case at bar, and upon the principle of it must be sustained. The latter case arose under the act of the legislature approved February 19, 1877, the first section of which sought to provide "That from and after the first day of June, 1877, it shall be unlawful for any person to take, wound, or kill any wild bird within this state at any season of the year, or to take or destroy any wild birds' eggs or nest at any time; *Provided*, That this act shall not apply to water-fowls, jack snipes, sand snipes, waders, and woodcocks." At the date of the passage of said act, as well as now, sections 83 and 86 of the Criminal Code were in force. By section 83 it was made unlawful for any person to knowingly and intentionally kill, injure or harm, except upon the lands owned by such person, any robin, lark, thrush, blue bird, king bird, sparrow, wren, jay, swallow, turtle dove, oriole, woodpecker, yellow hammer, cuckoo, yellow bird, bobolink, or other bird or birds of like nature that promote agriculture and horticulture by feeding on noxious worms and insects, or that are attractive in appearance or cheerful in song. By section 86 it was, amongst other things, made unlawful for any person to kill, ensare, or trap any wild grouse between the first day of February and the fifteenth day of August in each year; or to kill, ensnare, trap, or net quail or wild turkey between the first day of December in each year

and the first day of October in the following year. It will readily be seen that these sections of statute made or left it lawful for any person to kill, injure, or harm any of the wild birds mentioned in section 83, if done upon the lands owned by such person, and to kill wild grouse between the 15th day of August of any year and the 1st day of February of the next succeeding year, or to kill quail or wild turkeys between the 1st day of October and the 1st day of December of any year; but it was the purpose of the act of 1877 to make it unlawful for any person to take or kill any wild bird, with certain exceptions not material to be noticed here, at any season of the year. It was thus the purpose of that act to operate directly upon the purview of the statute then in force. This, it was held, it could not do under the constitutional provision quoted, as said act did not contain the sections thus sought to be amended.

I here quote sections 114 and 119 of the Criminal Code, the sections which, according to the contention of the defendant in error, and the theory of the judgment of the court below, were sought to be amended by the act of 1887.

"Sec. 114. If any person shall steal any money, or any goods and chattels of any kind whatever, whether the same be wholly money, or wholly in other property, or partly in money and partly in other property, the property of another, of the value of thirty-five dollars or upward; or shall steal or maliciously destroy any money, promissory note, bill of exchange, order, draft, receipt, warrant, check, or bond, given for the payment of money, or receipt acknowledging the receipt of money, or other property of the value of thirty-five dollars or upwards, every such person shall be imprisoned in the penitentiary not more than seven years nor less than one year; *Provided,* The word 'money' in this section shall be deemed and taken as including bank bills or notes, United States treasury notes, or other bills, bonds, or notes issued by lawful authority, and intended to pass and circulate as money."

\*    \*    \*    \*    \*    \*    \*    \*

"Sec. 119. If any person shall steal any money or goods and chattels of any kind whatever, of less value than thirty-five dollars, the property of another, or shall steal or maliciously destroy any money, promissory note, bill of exchange, order, draft, receipt, warrant, check, or bond given for the payment of money, or receipt acknowledging the receipt of money, or other property of less value than thirty-five dollars, every person so offending shall make restitution to the party injured in two-fold the value of the property stolen or destroyed, and be fined in any sum not exceeding one hundred dollars, or shall be imprisoned in the county jail for any time not exceeding thirty days. The word 'money' in the section shall be held to include bank bills or notes, United States treasury notes, or other bills, bonds, or notes issued by lawful authority and intended to pass (and) circulate as money."

Doubtless the legislature, in the preparation and passage of the act of 1887, had in special view the above sections of the Code, not with the purpose of changing any of their provisions, but of ascertaining what, if any, necessity existed for further legislation to check and adequately punish the rapidly increasing crime of larceny from the person committed by pickpockets at our state and county fairs and other large assemblages of people. An examination of the law as it then existed could not fail to develop the necessity of further legislation to accomplish the object in view, but pointed out no provision or language in that already upon the statute book, not necessary or convenient to other purposes of equal utility. There was simply a *casus omissus* and not a misapplication of provisions or words in the statute. The end desired could be attained by new and independent provisions and not by amending or changing the old ones.

The act of 1887 neither made nor sought to make any

change in either of the sections of the Code above quoted nor of any other provision of the law as it then existed; but recognized an offense not theretofore described in the statute and prescribed an adequate punishment therefor, leaving the provisions of the Criminal Code intact and in full force and effect. The only effect, then, that the passage of the act of 1887 had upon section 114 of the Criminal Code was to create the new offense of larceny from the person of money, or property, or both, of a value less than $35, and to prescribe a punishment therefor the same as that prescribed in said section for the larceny of money or property, or both, of the value of $35. An offender guilty of stealing money, or property, or both, of the value of $35, either from the person or otherwise, may still be prosecuted for grand larceny under section 114 of the Code; or if the larceny is from the person, he may be prosecuted under the new act. But it must be conceeded that the new act has an operation upon section 119 of the Code, for before its passage a person guilty of stealing money or property from the person of less value than $35 was, under the provisions of said section, only guilty of petit larceny, and for which he must have been originally tried before a magistrate, and for which the penalty was a fine not exceeding one hundred dollars, or imprisonment in the county jail not exceeding thirty days. Under the new act such person is guilty of grand larceny, of which offense a magistrate has no final jurisdiction, and the penalty for which is confinement in the penitentiary. Nevertheless the whole of the provisions of said section remain in full force, notwithstanding the new act, as applicable to larcenies other than from the person. Such operation of the act of 1887, upon section 119 of the Criminal Code, is clearly within the principle stated by then Ch. J. LAKE in the opinion of the court in the case of *Smails v. White, supra.* Speaking of the provision of the constitution invoked in this case, as in that, he said: "That an act *complete in itself* may operate on prior acts

6

as to materially change or modify them, without being within the mischief designed to be remedied by, or repugnant to, this provision of the constitution, is doubtless true," citing cases.

The district court erred in its judgment quashing the information and discharging the prisoner.

JUDGMENT ACCORDINGLY.

THE other judges concur.