## T. J. CROWELL v. STATE.

No. A-620. Opinion Filed September 5, 1911.

(117 Pac. 883.)

1.    JUDGMENT—Modification—Verdict—Appeal. Where the information was for stealing two mules, under section 2606, Snyder's Stat., and the verdict was guilty as charged in the information, the fact that the court adjudged the defendant guilty of grand larceny was not reversible error, since the word "larceny," if properly used, could not injure the defendant, the record furnishing a complete protection against another prosecution for the same offense, and the judgment will on appeal be modified and corrected under section 6955, Snyder's Stat., so as to conform to the charge in the information and the verdict.

2.    LARCENY—Theft of Animals—Evidence—Felonious Intent. Section 2606, Snyder's Stat., which provides: "That if any person shall steal any stallion, mare, colt, gelding, ridgeling, or any ass, genet, or mule, or any bull, cow, calf, steer or stag he shall be guilty of a felony and on conviction thereof shall be punished by confinement in the state penitentiary for a term (of) not less than one nor more than ten years"—creates a separate and distinct offense from section 2591 defining larceny to be "the taking of personal property accomplished by fraud or stealth, and with intent to deprive another thereof." To support a conviction under section 2606, it is necessary to prove a felonious intent on the part of the taker to deprive the owner thereof, and to convert the same to his (the taker's) own use, which specific proof is not necessary to support a conviction under the general larceny statute.

3.    CRIMINAL LAW—Crime—Definition of Offense. The definition of an act made an offense by statute, but not defined by it, may be ascertained by reference to the common law.

(Syllabus by the Court.)

*Appeal from District Court, Wagoner County; John H. King, Judge.*

T. J. Crowell was convicted of larceny, and brings error. Modified and affirmed.

*R. C. Allen, J. C. Graves,* and *Kistler & Haskell,* for plaintiff in error.

*Chas. West,* Atty. Gen., and *Smith C. Matson,* Asst. Atty. Gen., for the State.

DOYLE, J. Plaintiff in error was tried and convicted upon an information, the charging part of which is as follows:

"That T. J. Crowell and John Brown did, in Wagoner county and in the state of Oklahoma, on or about the 29th day of July, in the year of our Lord one thousand nine hundred and nine, and anterior to the presentment hereof, commit the crime of stealing mules, in the manner and form as follows, to wit: That the said T. J. Crowell and John Brown, in the county and state aforesaid, on or about the day, month, and year aforesaid, did unlawfully and feloniously steal, take, and carry away two mules, a more accurate description of which to this informant is unknown, of the value of two hundred and fifty dollars, the property of one W. M. Denton, with the felonious intent to deprive the owner, the said W. M. Denton, thereof, and to convert the same to their, said T. J. Crowell's and John Brown's, own use, contrary to the form of the statutes in such cases made and provided, and against the peace and dignity of the state."

Upon a separate trial of this defendant, the jury returned the following verdict:

"We, the jury, duly impaneled and sworn in the above-entitled cause, upon our oaths find the defendant guilty as charged in the information, and assess his punishment at imprisonment in the state penitentiary for a term of eight years."

The judgment of the court contains the following recital:

"And now on this 2d day of October, 1909, the same being the 18th judicial day of the regular September, 1909, term of said court, comes the defendant in person, in custody of the sheriff, into open court to receive the judgment and sentence of the court upon the verdict of the jury heretofore returned and entered, finding the defendant guilty of grand larceny and assessing

his punishment at imprisonment in the state penitentiary for a term of eight years."

The record discloses that the defendant filed a general demurrer to the information, "for the reason that the same does not state facts sufficient to constitute a public offense."

It is now contended for the first time:

"That the information, in alleging the value of the mules, charges two separate and distinct offenses, to wit, grand larceny and larceny of live stock, and that for this reason the verdict of the jury is insufficient to support the judgment of conviction, and the fact that the defendant failed to demur to the information for duplicity can in no way cure any uncertainty there may be.in the verdict of the jury or in the judgment and sentence of the court."

In support of this contention, counsel cite the cases of *Hughes v. Territory,* 8 Okla. 28, 56 Pac. 708, and *Sullivan v. Territory,* 8 Okla. 499, 58 Pac. 650.

Larceny is defined by our statutes as follows:

Section 2591, Snyder's Stat.:

"Larceny is the taking of personal property accomplished by fraud or stealth, and with intent to deprive another thereof."

Section 2593 provides:

"Larceny is divided into two degrees; the first of which is termed grand larceny, the second petit larceny."

Section 2594 provides:

"Grand larceny is larceny committed in either of the following cases:  1. When the property taken is of value exceeding twenty dollars.  2. When such property, although not of value exceeding twenty dollars in value, is taken from the person of another.  Larceny in other cases is petit larceny."

Section 2595 provides:

"Grand larceny is punishable by imprisonment in the state prison not exceeding five years."

Section 2606, Snyder's Stat. (Sess. Laws Okla. Ter. 1895, c. 20, art. 1, § 1, entitled, "An Act for the better protection of stock raisers"), is as follows:

"That if any person shall steal any stallion, mare, colt, gelding, ridgeling, or any ass, genet, or mule, or any bull, cow, calf, steer, or stag, he shall be guilty of a felony and on conviction

thereof shall be punished by confinement in the state penitentiary for a term (of) not less than one nor more than ten years."

The Supreme Court of Oklahoma Territory, in the case of *Hughes v. Territory, supra,* construing these statutes, held that section 2606, *supra,* creates a distinct and separate offense from larceny as defined by the general statutes, and does not make the stealing of the animals therein named grand larceny, without regard to value. Mr. Justice Burwell, in the opinion of the court, said:

"The contention of counsel for the appellant is that when the Legislature said 'that if any person shall steal any stallion, mare, colt,' etc., 'he shall be guilty of a felony,' it meant the same as if it had said, 'that if any person shall steal any stallion, mare, colt,' etc., 'he shall be deemed guilty of grand larceny.' In other words, it is contended that the word 'steal,' in act of 1895, is synonymous with the word 'larceny,' as used in the act of 1893; the only difference being that the act of 1895 makes the stealing of all domestic animals named in the act grand larceny, without regard to value. This contention cannot be sustained. The Legislature has modified the meaning of the word 'larceny,' as used in the crimes act, so that the taking of personal property, accomplished by fraud or stealth, and with intent to deprive another thereof, is larceny, regardless of whether or not it was taken for the purpose of depriving the owner thereof, or for the purpose of converting it to the use of the taker. Therefore, while stealing and larceny at common law were synonymous terms, our statute has given the word 'larceny' a much broader meaning than it then had; while 'steal' or 'stealing' has not been defined by our statutes, and must be construed according to its common-law meaning. This view is supported by the authorities. Bish. St. Crimes, § 413: 'If a statute, in general terms, provides that "whoever shall be guilty of larceny" shall be punished in a manner pointed out, the offense which it creates is the same in its entire extent and its limitations as larceny at common law, for example, since larceny at the common law cannot be committed by taking and carrying away, in one transaction, anything which pertains to the realty, it cannot under the statute. Therefore, under a statute, it is not larceny to take and carry away, with a felonious mind, copper pipe which was attached to the freehold. * * * The doctrine, in brief, is that where the indictment is really upon the

statute, instead of being at the common law, while the statute is simply looked to on the question of the punishment, it must be in the common-law form, but conclude against the form of the statute.' And again, in section 363 of the same work, it is said: 'Still, there is constant occasion to refer to the common law to ascertain the meaning of the statute in respect of the act; for we have seen that, if a statute employs a word or phrase which has already been used in the common law or in another statute, it is to be understood in the meaning previously determined. Thus, there are no common-law crimes against the United States; yet the acts of Congress, instead of minutely defining particular crimes, often make it penal, for example, to commit robbery or larceny or arson and so on, employing words of a well-known common-law meaning. In such a case the court looks to the common law to ascertain the nature and limits of the offense. And a robbery under the statute differs in no respect from a robbery purely at common law.'

"Taking into consideration the rule of construction as enunciated by Mr. Bishop, we must conclude that when the Legislature used the word 'steal' in the act of 1895, under which the defendant was indicted, tried, and convicted, it had in mind the crime of stealing or larceny as it existed at the common law, and not larceny as defined by our Statutes of 1893. And this is made more apparent when we take into consideration the reasons for the enactment of the law. The act is entitled 'An act for the better protection of stock raisers.' Cattle-stealing had become so common, particularly in the western part of the territory, that it became necessary for the Legislature to pass a law which would more fully protect those who had herds of cattle in the western counties, the general law on larceny being inadequate. By this act a new crime was incorporated into our statute—one that was independent of our statutory crime of larceny. Had it been the intention of the Legislature to simply make the stealing of these domestic animals grand larceny, without regard to value, it would have said so, and the punishment prescribed in grand larceny would have been inflicted upon those convicted of the offense; but the Legislature deemed this crime of stealing domestic animals a more serious offense than grand larceny. In fact, the punishment prescribed therefor is twice as great as that provided for in grand larceny, except larceny from the person, in which case the punishment is the same, and larceny from a dwelling house or vessel, in which event it might be eight years. One convicted of larceny under the statute can-

not, except in cases of larceny from the person or from a dwelling house or vessel, be sentenced to a term of more than five years in the penitentiary, no matter how great the value of the property taken; but, on the other hand, one who steals a calf, even if it is not worth more than a dollar can be sentenced to a term of ten years in the penitentiary. There is a reason for this difference. The persons who steal cattle and other domestic animals, as a rule, steal them from the owners thereof, with the intent to appropriate the same to their own use. They steal for gain—for the purpose of selling and profiting thereby. In fact, the persons that the statute was more particularly intended to punish were the persons who were stealing cattle and other domestic animals as a means of livelihood; and the law on larceny, as divided into degrees under the Statutes of 1893, was wholly inadequate. Many of the animals stolen were not of the value of more than $20; and therefore the law did not prevent the commission of the crime, and the punishment for petit larceny was not sufficient to prevent the larceny of such animals. Hence the creation of the statute of 1895. But the two acts are entirely different. The one has no reference to the other in any way. They are separate and distinct crimes. By construing them in this way, each is a perfect act within itself; but by construing the act of 1895 to be grand larceny, without regard to value, you destroy the degrees of larceny as fixed in the statute, when applied to certain kinds of personal property, viz., domestic animals. This cannot be done without disregard of well-known rules of statutory construction, which are, first, that statutes in *pari materia* are to be construed together; and, second, that an existing statute is not repealed by the passing of a subsequent one pertaining to the same matter, unless the two are so inconsistent that they cannot stand together, in which case the later one prevails. If, however, the act of 1895 is to be given the construction herein suggested, then the domestic animals named in the act may be either the subject of larceny, as defined in the 1893 statutes, or, if taken under such circumstances and conditions as would constitute larceny at common law, it would constitute the crime of stealing, under the act of 1895. To illustrate: If the property were of the value of $20 only, or less, the offender could be punished for petit larceny; if of the value of more than $20, he could be punished for grand larceny, or, if the facts were strong enough to warrant it, he could be indicted and tried under the statute of 1895, which makes the stealing of the domestic animals named therein a felony, no matter what the value of

the property stolen may be. This view is not unsupported by the authorities. *Kollenberger v. People* [9 Colo. 233], 11 Pac. 101; *Brown v. State* [34 Neb. 448], 51 N. W. 1028; *State v. Arnold* [31 Neb. 75], 47 N. W. 694.

"The only difference between the crime of stealing a domestic animal under the act of 1895 and larceny at the common law is that this act abolishes the degrees of the crime, and makes the stealing of any of these animals a felony, without regard to the amount of their value. By this, however, we do not mean to convey the idea that a thing which has no value can be stolen, although there are some authorities which hold that it is neither necessary to allege nor prove value, except for the purpose of fixing the degrees of the crime. But this question is not now before us. Several of the other states have passed laws similar to the act of 1895, which have been construed by their respective courts, but the wording of those statutes in every case is so different from the one before us that the decisions of the courts thereon fail to assist us in the construction of the act referred to above. When these two acts are construed in the way above pointed out, they are in perfect harmony, and can be measured by correct legal rules. But if the act of 1895, only makes the stealing of the animals named therein grand larceny, as defined by our Statutes of 1893, then the degrees of larceny cease to be measured by the value of the property stolen, and our statutes on larceny would be inconsistent and wholly wanting in any fixed rule."

The decision in this case is approved and followed by this court. The effect of the act (section 2606, *supra*) is not to take the stealing of any of the animals therein named out of the general provisions of the crimes act relating to larceny, but to leave it to be prosecuted under either act. To this extent their provisions are concurrent.

The information clearly and distinctly charges a violation of section 2606, and contains the necessary averments charging larceny under the common law.

"At common law larceny is usually defined as the wrongful or the fraudulent taking and carrying away, by any person, of the personal goods of another, from any place, without any color of right, with a felonious intent to convert them to the taker's own use, and making them his own property without

the consent and against the will of the owner." (Am. & Eng. Ency. vol. 18, p. 459.)

When a prosecution is predicated upon section 2606, to support a conviction, the ownership of the animals stolen must be alleged and proved, and it is necessary to allege and prove a felonious intent on the part of the taker to deprive the owner thereof and to convert the same to his (the taker's) own use, which specific proof is not necessary to support a conviction under the general larceny statute. That was done in this case. The allegation of value in the information is not material, and may be rejected as mere surplusage, which does no harm. But one offense—the larceny of live stock, as defined by section 2606—is charged in the information, and the objection to the verdict on the ground that it is too general is not well taken.

It is also urged that the judgment is insufficient, in that it does not show that the defendant was informed by the court, or by the clerk under its direction, of the nature of the information, and his plea and the verdict thereon, as required by statute, and that the judgment is insufficient, in that it shows the court adjudged the defendant guilty of grand larceny; five years' imprisonment being the maximum punishment for this offense. Section 6910, Snyder's Stat., provides:

"When the defendant appears for judgment, he must be informed by the court, or by the clerk under its direction, of the nature of the indictment, and his plea and the verdict, if any thereon."

The record in this cause does not contain the instructions given, and is otherwise incomplete. Upon this record we are unable to determine whether or not this requirement of the statute was complied with. We will not presume that it was not done. There was no objection made or exception taken in the court below to the proceedings had. All presumptions favor the regularity of the proceedings before the trial court. We find that the judgment recites, that "upon the verdict of the jury heretofore returned and entered, finding the defendant guilty of grand larceny and assessing his punishment at imprisonment in the

state penitentiary for a term of eight years." It is evident that this was merely a clerical mistake in designating the character of the larceny; the jury having found the defendant guilty as charged in the information, which offense was the larceny of live stock. No particular form of words is prescribed by our criminal procedure in pronouncing and entering a judgment of conviction in a criminal case.

Section 6911 provides that defendant may show cause against judgment. Section 6912 provides:

"If not sufficient cause be alleged or appear to the court why judgment shall not be pronounced it must thereupon be rendered."

Section 6919 provides:

"When judgment upon a conviction is rendered, the clerk must enter the same upon the minutes, stating briefly the offense for which the conviction has been had, and must immediately annex together and file the following papers, which constitute a record of the action: 1st. The indictment (or information) and a copy of the minutes of the plea or demurrer. 2nd. A copy of the minutes of the trial. 3rd. The charges given or refused, and the indorsements, if any, thereon; and, 4th. A copy of the judgment."

That statute expressly declares this to be the record of the action, and this is the record which would have to be produced in support of a plea of former jeopardy, and, if this record furnishes facts sufficient to protect the defendant against another prosecution for the same offense, it cannot in reason be claimed that the record is defective in any matter of substance. Section 6957 provides:

"On an appeal the court must give judgment without regard to technical errors or defects, or to exceptions which do not affect the substantial rights of the parties."

The words "grand larceny," mistakenly used in entering judgment, could not in any way have misled or injured the defendant. The information, plea, minutes of the trial, verdict, and judgment taken together furnish the defendant complete protection against another prosecution for the same offense; and, while this mistake does not affect any of the substantial rights

of the defendant, under the power granted to this court by section 6955, Snyder's Stat., which provides, "The appellate court may reverse, affirm or modify the judgment appealed from," the judgment appealed from will be reformed and modified by striking out the word "grand" before "larceny," and adding the words "of live stock" after the word "larceny," making the recital read, "finding the defendant guilty of larceny of live stock," as charged in the information.

Finding no substantial errors in the record, the judgment of the district court of Wagoner county, as modified, is hereby affirmed.

FURMAN, P. J., and ARMSTRONG, J., concur.