# OTTO SNEED v. STATE.

No. A-9139.   March 12, 1937.
(65 Pac. [2d] 1245.)

Geo. L. Sneed, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for the state.

DOYLE, J. Plaintiff in error, Otto Sneed, and Tom Fuson were informed against for the defense of larceny of live stock. The information in substance charges that in Marshall county on or about the 29th day of May, 1935, the said defendants did feloniously take, steal, and carry away a cow, the personal property of one Lewis Townsley, with the felonious intent then and there on the part of them to deprive said Lewis Townsley of said livestock, and to convert the same to their own use and benefit.

Upon his separate trial the defendant, Otto Sneed, was found guilty as charged in the information and his punishment assessed at confinement in the state penitentiary for two years. Motion for new trial was filed and overruled. From the judgment entered in pursuance of the verdict November 13, 1935, he appeals.

The errors assigned and argued are that the evidence was not sufficient to sustain a conviction, and that the court erred in refusing to give certain instructions requested by the defendant.

It appears from the evidence that in September, 1934, the government issued cows at Tishomingo to Indian citizens and as they were given out each one was branded (U.S.), that one cow so branded was issued to Lewis Townsley, further described as a red motley faced cow, branded (U.S.) on the right side with a lazy (D) brand on the left side. Townsley took his cow to his home near Shay, where she was kept in Ed Long's pasture. Some time in the spring of 1935, she strayed or was stolen. After searching and being unable to find her, he reported his loss to A. G. Beames, constable, and asked him to help find the cow. Beames, knowing that Ed Long had moved his herd of cattle from that community to the northern part of the county, called on Mr. Long and asked him if he had this cow in his herd. Long told Beames that he had the cow and promised to take care of her until springtime. Townsley was later seen and this agreement was made with Long, but neither Beames or Townsley ever went to Long's pasture to see the cow, which was about twenty miles from Townsley's pasture at Shay.

Ed Long testified that this cow later got into the adjoining pasture of Ira Wilson, but the grass had come up by that time and he no longer had anything to do with her. She was thought to be a stray by Ira Wilson and was so reported by him to the neighbors.

Ira Wilson testified that he lived in Marshall county, that on May 29, Otto Sneed came to his place looking for a stray cow, and Tom Fuson and Fred Nichols were in the car with him, that he took him to the pasture where he had twenty-five cows, and he walked up to a stray cow that was there and said it was his. It was a motley faced red cow, branded U. S. on the right side and D. on the left hip, Sneed paid him $1.50 for keeping the cow, about

noon that day Fred Nichols came with a truck and hauled the cow away.

The defense interposed was that the cow alleged to have been stolen was taken with the belief on the part of the defendant that the cow belonged to him, and that he had a right to take it.

The testimony of Guy Lindsay, Ed Stapleton, D. Lambert, and Tom Fuson on behalf of the defense tends to show that in September, 1934, the government issued cattle in Johnston county, Okla., and a certain motley faced red cow, branded (U.S.) and another dim brand, was issued to one Guy Lindsay who loaded her into a trailer and had started to his home north of Mansville, when the cow broke through the trailer. It being just about dark on Saturday night, he obtained permission to put her in the lot of Ed Stapleton, who ran a filling station in Tishomingo. The following Monday when Lindsay returned he saw the defendant, Sneed, and traded the said cow to him for a small jersey cow, that the defendant with the assistance of others took to his home, only a short distance from the Stapleton lot and there kept her for a few days, then took her to some stalk fields down on the Washita river where his mother, brother, and himself had about one hundred head of cattle.

As a witness in his own behalf, Otto Sneed testified that the cow he traded for from Guy Lindsay was the cow he sold to Tom Fuson. That he looked after the family herd in the stalk fields and saw the Lindsay cow there with the other cattle until some time in December, when said cow and four jersey yearlings were lost or stolen from the herd, that the yearlings were never received, that late in May with Tom Fuson he drove over to Marshall county and picked up Fred Nichols and went

on to the Wilson place. That they went out in the pasture and when they got up within 50 yards from the herd he picked the cow, and Mr. Wilson said that was the stray, and he paid him for the pasturage and hired the Nichols boy and paid him $5 to haul the cow to Tishomingo, telling him he would meet him there at the station; that when Nichols arrived there Tom Fuson made an offer for the cow, which he accepted and he directed Nichols to take the cow on to Tom Fuson's place, that Fuson paid for the cow there in the presence of several other persons, that about two months later when Mr. Beames and Mr. Wilson came to his place and said they wanted to talk to him he got in the car and they drove into Tishomingo, there Mr. Beames asked him about the cow, he said, "I don't know anything about it now, whenever the time comes I will talk;" that he went and got this cow in good faith as the cow he traded for from Guy Lindsay; that he honestly believed that it was his cow and still so believes.

On cross-examination he stated that he might have said it would be cheaper to pay the boy for his cow than to go through court, that he has never been convicted of any offense.

The court gave the following instructions:

"(II) You are further instructed that under the laws of the state of Oklahoma, larceny is defined as the taking of personal property accomplished by fraud or stealth and with the intent to deprive another thereof.

"And under the law any person in this state who shall steal any cow shall be punished by confinement in the state penitentiary for a term not less than two years nor more than ten years. And in this connection you are told that the word 'cow' includes all animals of the bovine species.

"(III) Therefore you are instructed, gentlemen of the jury, that if you find beyond a reasonable doubt that

the defendant, Otto Sneed, did take steal and carry away the cow described in the information filed herein knowing at the time that the same was not his own, or that he caused the same to be taken, then you will find the defendant guilty of the crime charged and assess his punishment at confinement in the state penitentiary not less than two years nor more than ten years."

By these two instructions, the court attempted to cover the law of the case.

The court refused to give the following requested instruction presented by the defendant:

"You are further instructed that the felonious intent is one of the material allegations of the crime of larceny of live stock, as charged in the information, and the burden is on the state to prove that element to your satisfaction beyond a reasonable doubt.

"Refused. Exception allowed."

In order to fully understand the issues presented, we will have to look to the language of the statute which defines the offense charged. It is as follows:

"Any person in this state who shall steal any horse, shall be guilty of a felony and upon conviction shall be punished by confinement in the state penitentiary for a term of not less than five years nor more than ten years; and any person in this state who shall steal any cow, or hog shall be guilty of a felony and upon conviction shall be punished by confinement in the state penitentiary for a term of not less than two (2) years, nor more than ten years." Penal Code, § 2267 (21 Okla. St. Ann. § 1716).

This statute is silent as to intent. The statute says, "any person in this state who shall steal any cow" shall be guilty of a felony.

An examination of the authorities will show that "larceny" and "stealing," at common law, had the same

meaning; and consequently stealing, as here defined, is the wrongful or fraudulent taking and removing of personal property, by trespass, with a felonious intent to deprive the owner thereof, and to convert the same to his, the taker's, own use. The crime of larceny, by our statutes, has been widened to a considerable extent. Our statute defines larceny as follows:

"Larceny is the taking of personal property, accomplished by fraud or stealth, and with intent to deprive another thereof." Penal Code, § 2253 (21 Okla. St. Ann. § 1701).

Thus it appears the Legislature has modified the meaning of the word "larceny," as used in the Penal Code, so that the taking of personal property accomplished by fraud or stealth, and with intent to deprive another thereof, is larceny, regardless of whether or not it was taken for the purpose of depriving the owner thereof or for the purpose of converting it to the use of the taker. Therefore while stealing and larceny at common law were synonymous terms, our statute has given to the word "larceny" a much broader meaning than it then had; while "steal" or "stealing" has not been defined by our statutes, and must be construed according to its common-law meaning. Crowell v. State, 6 Okla. Cr. 148, 117 Pac. 883; Hughes v. Territory, 8 Okla. 28, 56 Pac. 708.

The only difference between the crime of stealing a domestic animal under section 2267, supra, and larceny at the common law, is that this statute abolishes the degrees of the crime and makes the stealing of any of the animals named a felony, without regard to the amount of their value.

When these two sections are construed as above pointed out, they are in perfect harmony, and can be

measured by correct legal rules. But if section 2267 only makes the stealing of the animals named therein grand larceny, as defined by our statutes (Penal Code, § 2256 [21 Okla. St. Ann. § 1704]), then the degrees of larceny cease to be measured by the value of the property stolen, and our statute on larceny would be inconsistent and wholly wanting in any fixed rule.

Section 2267, supra, creates a separate and distinct crime from section 2253, defining larceny. To support a conviction under section 2267, it is necessary to allege and prove the ownership of the animal stolen, and a felonious intent on the part of the taker to deprive the owner thereof and to convert the same to his, the taker's, own use, which specific proof is not necessary to support a conviction under the general larceny statute. Section 2253, supra. Crowell v. State, supra; Bryan v. State, 11 Okla. Cr. 180, 144 Pac. 392; Underwood v. State, 23 Okla. Cr. 119, 212 Pac. 1010; Cope v. State, 23 Okla. Cr. 161, 213 Pac. 753.

From an application of a familiar principle that every person is presumed to intend to do that which he does do, and also to intend the natural consequences of his acts, juries naturally and usually do infer, from the acts entering into the crime of larceny of live stock and the manner of their commission, the intent to deprive the owner of the property taken; but this is by no means a necessary inference, for the intent accompanying the acts may be entirely wanting, or in itself an innocent one, for instance, the property may be taken with an intent to return it, or be taken by mistake, or by some intent other than to deprive the owner thereof, in which case the offense has not, of course, been committed.

The intent to steal does not follow the act of taking as a legal and conclusive presumption.

The rule in cases where property is taken under claim of right as laid down in 2 Bish. Cr. Law, par. 451, is that:

"In all cases where one in good faith takes another's property under claim of title in himself, he is exempt from the charge of larceny, however puerile or mistaken the claim may in fact be. And the same is true where the taking is on behalf of another, believed to be the true owner. Still, if the claim is dishonest,—a mere pretense, —it will not protect the taker."

Another well-organized rule is that where the taking is open, and there is no subsequent attempt to conceal the property and no denial, but an avowal of the taking, a strong presumption arises that there was no felonious intent which must be repelled by clear and convincing evidence before a conviction is authorized.

While it is a rule approved by this court that where there is any evidence to support a conviction, or where the evidence is conflicting, this court will not review the record for the purpose of ascertaining or determining the weight or sufficiency of the same, and, ordinarily, the verdict approved by the trial court will be allowed to stand. A case of this character, however, is exceptional.

Upon a careful examination, our conclusion is that the evidence is insufficient to sustain the conviction.

It will be observed that instruction No. 2 submitted the issue of grand larceny, the court defining the same in the exact language of section 2253, supra, and the other instructions given omit one essential element of the crime of larceny of live stock, the felonious intent on the part of the taker to deprive the owner thereof and to convert the same to his, the taker's, own use.

Upon the crime charged and the evidence introduced, it was the duty of the court to submit the case to the jury on the crime as defined by section 2267, and in connection therewith to give the requested instruction. In failing to so instruct, error prejudicial to the substantial rights of the defendant was committed.

It follows from what has been said that this cause was tried and submitted to the jury upon an erroneous theory of the law.

For the foregoing reasons, the judgment is reversed and the cause remanded to the trial court.

DAVENPORT, P. J., and BAREFOOT, J., concur.