## W. E. STONE v. STATE.

No. A-10348.   March 28, 1945.
(157 P. 2d 468.)

· W. R. Wheeler, of Anadarko, for plaintiff in error.

Randell S. Cobb, Atty. Gen., and Jess L. Pullen, Asst. Atty. Gen., for defendant in error.

JONES, J. The defendant, W. E. Stone, was charged by information filed in the county court of Caddo county with the offense of unlawfully asking a gratuity or reward for employing another person as a teacher in a public school of this state; was tried, convicted, and sentenced to pay a fine of $200 and costs, and has appealed.

The following assignments of error are presented in defendant's brief: (1) The information is insufficient to state a cause of action against the defendant. (2) The evidence is insufficient to sustain the conviction. (3) The court erred in giving certain instructions.

The information filed against defendant, omitting formal parts, reads as follows:

"One W. E. Stone. late of the County of Caddo and State of Oklahoma, on or about the ——— day of April,

in the year of our Lord one thousand nine hundred and 41 at and within the said county and state, did then and there intentionally, wilfully, and unlawfully being then and there a duly qualified, appointed and acting member of the school board of School District No. 45, Caddo County, Oklahoma, did then and there ask the said Aline Danner for $50.00, as a bribe, Gratuity, or reward for employing the said Aline Danner as a teacher in said School district. Contrary to the form of the Statute in such cases made and provided and against the peace and dignity of the State."

The statute under which this prosecution was instituted provides:

"It shall be unlawful for any person, directly or indirectly, to ask or receive, or promise to receive, any gratuity or reward, or any promise of a gratuity or reward for employing another person as a teacher in any public school of this state, or for procuring for another person employment as a teacher in any public school of this state." 21 O. S. 1941 § 397.

This court has many times held that when a statute creates an offense and sets out the facts which constitute it, the offense may be sufficiently charged in the language of the statute. Robinson v. State, 8 Okla. Cr. 667, 130 P. 121; Oldham v. State, 43 Okla. Cr. 108, 277 P. 254; Rhodes v. State, 30 Okla. Cr. 2, 234 P. 645; Hunter v. State, 63 Okla. Cr. 24, 72 P. 2d 399.

In Allen v. State, 63 Okla. Cr. 16, 72 P. 2d 516, it is stated:

"An information for a statutory offense is sufficient if it alleges the commission of the crime in the words of the statute, if by that means all that is essential to constitute the offense is directly charged. But if the statute does not set forth all the elements necessary to constitute the offense intended to be punished, an information which simply follows the words of the statute is not sufficient.

It must, in such case, allege the particular facts necessary to bring the case within the intent and meaning of the statute."

An analysis of this information shows that it charges (1) W. E. Stone, (2) in April, 1941, (3) while he was a member of the school board of school district No. 45, of Caddo county, (4) did unlawfully ask $50 as a bribe, gratuity, or reward, (5) for employing Aline Danner as a teacher in said school district. This information charges all of the essential elements of the offense and is certainly sufficient to inform the defendant of the nature of the offense charged against him, so as to enable him to prepare his defense and so identifies the offense that defendant will be able to defend himself against any subsequent prosecution for the same offense..

In considering the second assignment of error, a short review of the evidence is necessary.

F. M. Friesen, county superintendent of Caddo county, testified that John Mulligan, a member of the school board of school district No. 45 of Caddo county, died in 1940 and that he, as county superintendent, appointed W. E. Stone to succeed the said Mulligan as a member of the said school board. That defendant took his oath of office on April 20, 1940. On June 17, 1940, the clerk of said school board having resigned, defendant resigned as the member of said school board and was immediately appointed as clerk of said board. That he served as clerk of said board continuously from June 17, 1940, until his resignation on May 31, 1941.

Aline Danner testified that she taught school in common school district No. 45, of Caddo county, for four years. That in April, 1941, defendant, Ben White, and C. L. Marcom were the three members of the school board of her

school district. That in April, 1941, she placed her application with said board for a renewal of her teacher's contract for the ensuing school term. That she placed her application at the annual school meeting and Mr. White told her at that time that she was to have the school. That Mr. Stone was present at the meeting and was willing for her to have the school. That, later, when she did not get her contract, she asked Mr. Stone what was the matter. That she had two or three conversations with him. That the first conversation took place in the yard at the schoolhouse. That the defendant told her that she and the other teacher would have to pay him and Mr. White for their contracts. That she was to pay defendant $50 and the other teacher was to pay Mr. White. That she refused to pay the $50. That she had another conversation with the defendant later in which defendant told her he had destroyed the contract because she refused to pay the $50. That she prepared a new contract and the other two board members signed it. That nobody was present at the time she had the conversation with the defendant.

Clifton Marcom testified that he was a member of the school board of school district No. 45, in Caddo county, in April and May of 1941. That he signed the contract with Aline Danner for her to teach in said school district for the ensuing school year in April, 1941. That he had a conversation with the defendant in regard to the contract of Mrs. Danner. That defendant brought Mrs. Danner's contract to him for his signature. That defendant had already signed the contract. That defendant came to his place one morning and brought Kate's (Sage) and Aline's (Danner) contracts. That he and Stone signed both contracts. That Stone said he was taking the contracts over to see Mr. White, the other member of the

school board. That Stone said, "I want to go over there and I believe we will get some easy money." That the witness proposed to go with him to see White and Stone objected and said that he wanted to go by himself. That in the conversation had with defendant, defendant said he had asked them (the teachers) for the money and that he (the witness) told Stone that he did not want any of the money. That he told the defendant Stone that he was liable to get into trouble doing that. On cross-examination, the witness testified that the defendant did not say he was going to get money from Aline Danner. At this point, the state rested. No demurrer to the evidence nor motion for instructed verdict was presented by the defendant.

Mrs. W. E. Stone, wife of defendant, testified that she was present cooking some W.P.A. lunches at the schoolhouse when Mrs. Danner talked to her husband about her teaching contract. That defendant told her that she was not going to get the school because the patrons did not want her. That Mrs. Danner offered defendant $50 if he would give her the contract, but defendant refused, stating: "I don't want to get in the Pen." That her husband told Mrs. Danner that Miss Sage, the other teacher, was going to get her school. She then testified that Miss Sage, the other teacher, did not stay and teach but secured another job. The witness testified that in the conversation between her husband and Mrs. Danner that Mrs. Danner said that she and Katie Sage had been giving $50 to get the school and that if the defendant woud take the money, no one would be the wiser. On cross-examination, the witness denied that her husband asked $50 from Miss Sage to teach the next year.

Three witnesses testified as to the good reputation of defendant.

Mrs. Alice Harris testified that her husband was formerly on the school board. That when Mrs. Danner applied for the school she heard her tell her husband that she would give 10% of her salary to the school district and the Sunday school. On cross-examination, she testified that she did not say the school district board, but that she understood that Mrs. Danner meant to give the money as charity to the district.

The defendant, W. E. Stone, testified that he talked to Mrs. Danner and her husband the next day after the annual school meeting in March, at the schoolhouse, and Mrs. Danner asked if she was going to get the school, and he told her that he could not let her have it as "nobody wants you. The rest of the school board agreed to not hire you." That Mrs. Danner said, "I'll give you $50 and call it rent on the teacherage." That he refused because he did not want to go to the pen. That during the same conversation, Mrs. Danner asked if he would like to talk to Katie Sage, and that Mrs. Danner left and sent Katie Sage out to talk to him. That Katie Sage said: "Did you want to see me?" I said, "Do you want the school?" She said, "Sure, I have to teach school." I said, "Aline tells me you are giving $50 and counting it to the teacherage." She never said a word. She said, "I have to teach school." I said, "You will get the school." That's all there was to it. On cross-examination, the defendant testified that he asked Miss Sage if she had been giving $50 for her contract because if he had learned that she had been giving this money to get her contract, that he would not give her a contract. He denied asking Katie Sage for $50 before giving her a contract.

Katie Sage testified in rebuttal that Mr. Stone at the time he had a conversation with her the next day after

the annual school meeting asked her for $50, in order to get the school for the next year. That she did not want to pay to get a job teaching so she secured her another teaching position at LaCrosse. On cross-examination, counsel for defendant asked the following question:

"Q. Go ahead and explain word for word what was said there between you and Mr. Stone. A. He told me that I could have the contract for the school if I would give him $50. That other teachers around were doing that. That I could have the school if I would pay him $50. I told him I never had paid money to get a school. It was against the law and would get me into trouble and get him into trouble, and I didn't have the $50."

The witness further testified that she reported the action of the defendant Stone to the State Board of Education, by executing an affidavit relating the facts and giving it to an inspector for the State Board of Education. This statement was read to the jury without any objection being interposed on behalf of the defendant. The affidavit is quite lengthy and detailed all of her teaching activity at the school and relates the occurrence at the schoolhouse where the defendant allegedly asked her for $50, before he would give her a contract to teach the following school term.

In the original brief filed herein, counsel for defendant insisted that the evidence was insufficient to sustain the conviction for the reason that the information charged that defendant was a member of the school board and the evidence showed that he was the clerk of the school board and that as clerk of the school board he did not have any authority to hire teachers. The fallacy of this line of reasoning was pointed out in the answer brief of the state wherein attention was directed to the statute (70 O. S. 1941 § 101) which provides that the officers of independ-

ent school districts shall be a director, clerk, and member who shall be the governing board of said district. This statute provides for the annual election of one of said officers of said school board as follows:

"And thereafter at each annual meeting there shall be elected one member of said board in place of the outgoing member, who shall hold his office for three years and until his successor shall be elected and qualified."

It is plain that the defendant was a member of the school board although not the member of the school board who was legally designated as the member of the board, but the director, clerk, and member of said school board are all members of the school board. The information did not charge that defendant was the member of the school board, but it charged that he was "a member of the school board of school district No. 45." This contention of defendant is without substantial merit. In the reply brief of defendant, it is virtually conceded that there is no merit to this contention, but they raised the further contention that there is not sufficient corroboration of the testimony of the complaining witness to sustain the conviction.

21 O. S. 1941 § 391 provides:

"In all cases wherein the offering, giving or receiving bribes is made criminal by the provisions of the penal code, the party to such crime who shall first furnish information in relation thereto, as against the other parties, and in any prosecution therefor, shall testify to the same truthfully and fully, shall not thereafter be criminally liable therefor, but in such case no conviction shall be had on the uncorroborated testimony of one such witness. R. L. 1910, § 2193."

It is not necessary for us to determine whether this statute is applicable to the prosecution in the instant case

because a consideration of the evidence hereinabove quoted shows that, if the statute were applicable, there is sufficient corroboration of Aline Danner's testimony to sustain the conviction. The testimony of Clifton Marcom that defendant said to give him the contract and they would make some easy money and that defendant said that he had asked the teachers for money corroborates the testimony of Aline Danner. The testimony of Katie Sage that upon the occasion when defendant allegedly asked the $50 from Aline Danner that he also asked $50 from her, together with the further circumstances that both teachers made reports of the incident—Mrs. Danner to the county superintendent and Miss Sage to the State Superintendent, together with the circumstances that both teachers immediately secured jobs at other schools are all circumstances to be considered in corroboration of Aline Danner's testimony.

We do not undertake to construe the applicability of the above statute to a prosecution under the statute here involved, other than to say there is no offering, giving, or receiving of any bribe in this case. Defendant asked a bribe, but none was offered, given, or received.

Defendant complains of the following instruction given to the jury:

"You are further instructed, gentlemen, that there has been certain evidence introduced herein to the effect that the defendant asked Katie Sage, a teacher at the said school, to pay to the defendant the sum of $50 as a gratuity or reward for the said Katie Sage being employed at the school as a teacher. You are instructed, gentlemen, that this evidence is competent only for the purpose of impeaching the credibility of the witness, W. E. Stone, and will be considered by you gentlemen for this purpose only."

Counsel for defendant first injected the Katie Sage issue into the case by the testimony of Mrs. Stone and the defendant on direct examination. It then became competent on rebuttal to introduce the testimony of Katie Sage to impeach defendant's testimony. The instruction, as given, was more favorable to defendant than he was probably entitled to, as the testimony of Katie Sage could have been considered in corroboration of the testimony of Aline Danner, as bearing on the guilt or innocence of defendant. The court in this instruction limited the jury in their consideration of the Katie Sage testimony to that of impeachment only, and since the instruction is more favorable than defendant deserves, he may not complain.

The other instruction complained of by defendant was as follows:

"You are further instructed, gentlemen, that there has been certain testimony introduced to the effect that the defendant, prior to the alleged commission of the crime charged, bore a good reputation in the community in which he lived, as being peaceable and law abiding citizen.

"This evidence is competent, gentlemen, for your consideration, and should be considered by you, together with all the other evidence, facts and circumstances proven in the case, as to the guilt or innocence of the defendant.

"And if, after a consideration of all the evidence in the case, including that of the defendant's good reputation for being a peaceable, law abiding citizen, or that of his previous good reputation alone, you entertain a reasonable doubt as to the guilt of the defendant, you should find him not guilty.

"But, if, after a consideration of all the evidence in the case. including that as to the defendant's previous good reputation, you entertain no reasonable doubt as

to his guilt, then you should find the defendant guilty, notwithstanding his previous good reputation."

It is not pointed out in just what particular this instruction is erroneous. Similar instructions have been sustained by this court. Wilson v. State, 3 Okla. Cr. 714, 109 P. 289; Holmes v. State, 6 Okla. Cr. 541, 119 P. 430, 120 P. 300; Jolliffee v. State, 21 Okla. Cr. 278, 207 P. 454; McCullom v. State, 22 Okla. Cr. 46, 209 P. 781; Gray v. State, 56 Okla. Cr. 208, 38 P. 2d 967.

It is our conclusion after a careful review of this whole record that there are no errors of sufficient importance to justify or require a reversal of the judgment of conviction. The judgment of the county court of Caddo county is accordingly affirmed.

BAREFOOT, P. J., concurs. DOYLE, J., not participating.