# SHERFIELD v. STATE.

No. A-11701.  Dec. 31, 1952.

(252 P. 2d 165.)

Robert H. Warren, Hugo, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., and Sam H. Lattimore, Asst. Atty. Gen., for defendant in error.

POWELL, J.   Elbert Sherfield, defendant (plaintiff in error), was charged in the district court of Choctaw county with the crime of larceny of livestock; was tried before a jury, convicted, and his punishment fixed at five years in the State Penitentiary.   Appeal has been perfected to this court by transcript.

The transcript discloses that prior to the conviction appealed from, defendant had been convicted of the charge in question in the same case on December 5, 1950, with punishment fixed at three years in the State Penitentiary, but on hearing of motion for new trial filed by the defendant, the court had granted a new trial upon the ground that the information upon which the case had been tried did not sufficiently allege the offense.   The court permitted the county attorney to amend the information instanter by interlineation and overruled defendant's motion to dismiss on the ground that he had not had a preliminary hearing upon said information as amended.   The defendant assigns as reversible error the fact that he did not have a preliminary hearing on such information as amended.

It is argued on behalf of defendant that the court did not have further jurisdiction.   Counsel states:

"We do not think it necessary to cite authorities.   However, the court held in an early case, Anderson v. State, 21 Okla. Cr. at page 177, 204 P. 132, in substance that when a demurrer is sustained to an information and order is made to be further proceeded with by information, in such case it is necessary to accord accused another examining trial.   When this defendant was granted a new trial it amounted to exactly the same thing as the demurrer to the information having been sustained when the court granted the new trial for the reason the original information did not state an offense against the defendant against the laws of Oklahoma, especially as to the offense sought to be charged."

We shall set out the charging part of the original information and show the interlined amendments by italics contained in parenthesis, as follows:

"* * * that Elbert Sherfield did in Choctaw County, State of Oklahoma, on or about the 14 day of February, 1950, and anterior to the presentment hereof, commit the crime of larceny of livestock, in the manner and form as follows, to-wit: that he, the said defendant, then and there being, did then and there wilfully, wrongfully, unlawfully, take, steal and carry away from the pasture of Ernest Steen, in Choctaw County, Oklahoma, a heifer calf about ten months old, (*the personal property of the said Ernest Steen*) without the knowledge or consent of the said Ernest Steen, (*and against his will*) with the wilful, wrongful, unlawful and felonious intent on the part of the defendant, to cheat, and defraud, (*and deprive*) said Ernest Steen (*the true owner thereof*) and convert the same to his, the defendant's, own use and benefit, contrary to the form of the statutes * * *" etc.

The record discloses that the defendant had a preliminary hearing on the charge for which tried, before an examining magistrate, and that thereafter an information was filed in the district court of Choctaw county, as shown above, less the amendments.   The record does not show that a demurrer was lodged against said information, or that any complaint was made as to the sufficiency of the same.   Ordinarily, an information which is not fatal on jurisdictional grounds is sufficient upon which to base a judgment of conviction, where no question as to its sufficiency is raised until after the verdict of the jury.   Flowers v. State, 8 Okla. Cr. 503, 129 P. 81; Monahan v. State, 95 Okla. Cr. 234, 243 P. 2d 744, and a long list of cases cited.   Nevertheless, the court on motion for new trial did consider the information insufficient by reason of failure to allege the matters permitted to be supplied by interlineation as shown and quoted

above. And in view of the action of the trial court, if these were material changes and that had the effect of injecting new issues into the case, and such new matter was required in order to charge the crime set out in the applicable statute, Tit. 21 O. S. 1951 § 1716, the defendant should have been granted a new preliminary hearing prior to the trial upon such information as amended.

The material portion of the above statutory provision reads:

"Any person in this State who shall steal any horse * * * cow * * shall be guilty of a felony and upon conviction shall be punished by confinement in the State Penitentiary for a term of not less than three years, nor more than ten years * * * ."

Ordinarily, it is sufficient to charge a crime substantially in the language of the statute. Reed v. Territory, 1 Okla. Cr. 481, 98 P. 583; Robinson v. State, 8 Okla. Cr. 667, 130 P. 121; Stone v. State, 80 Okla. Cr. 124, 157 P. 2d 468; Douglas v. State, 93 Okla. Cr. 132, 225 P 2d 376.

It is the contention of the Attorney General that the interlineations made did not interpose any new issue. He argues:

"While the original information did not allege specifically that the stolen property was the personal property of Ernest Steen and that the larceny was with the intent to 'deprive' the owner, it did charge that the property was stolen and carried away from the pasture of Ernest Steen without his knowledge or consent and with the 'felonious' intent to cheat and defraud said Ernest Steen and convert the property to defendant's own use and benefit."

Stealing must be construed by the common-law meaning, in that it has not been defined by statute. Crowell v. State, 6 Okla. Cr. 148, 117 P. 883; Hughes v. Territory, 8 Okla. 28, 56 P. 708. However, by provision of Tit. 21 O. S. 1951 § 1716, the degrees of the crime are abolished, and the stealing of any of the animals named constitutes a felony without regard to number or value.

In Sneed v. State, 61 Okla. Cr. 96; 65 P. 2d 1245, this court stated with reference to the rule as to necessary allegations where a person is charged with the crime of larceny or "stealing" of domestic animals, that it is necessary to allege and prove the ownership of the animal stolen, and a felonious intent on the part of the taker to deprive the owner thereof and to convert the same to his, the taker's own use,—which specific proof is not necessary to support a conviction under the general larceny statute.

A short time prior to the Sneed case, in Butler v. State, 60 Okla. Cr. 188, 62 P. 2d 662, Judge Doyle, who also wrote the opinion in the Sneed case, in the syllabus, had for the court announced the rule as to ownership of stolen animals, as follows:

"2. The actual status of the legal title to stolen property is no concern of the thief; so far as he is concerned, one may be taken as the owner who is in possession of the property and whose possession was unlawfully disturbed by the taking.

"3. In a prosecution for larceny of livestock, the name of the owner of the property stolen is only required to identify the transaction, so that the defendant, by proper pleading, may protect himself against another prosecution for the same offense.

"Section 2888, Procedure Criminal (St. 1931) [Tit. 22 O. S. 1951 § 406] provides: 'When an offense involves the commission of, or an attempt to commit a private injury, and is described with sufficient certainty in other respects to identify the act, an erroneous allegation as to the person injured, or intended to be injured, is not material.' Held, under this statute the name of the owner is not material if the proof discloses the essential facts necessary to constitute

the larceny charged, including the possession of the property by the alleged owner."

And while the Sneed case failed to mention the Butler case, any question as to the meaning of "owner" was further clarified in the later well-considered case of McDaniels v. State, 77 Okla. Cr. 84, 139 P. 2d 191, 193. There it was also determined that one in possession of personal property has such title thereto as would justify a charge of larceny against another who might unlawfully steal the same. And it was further determined that when the word "steal" is used it means to take and carry away the property of another, with the felonious intent to deprive the owner thereof, and to appropriate the same to one's own use. In the body of the opinion, Judge Barefoot for the court stated:

"* * * Under the statute of larceny of domestic animals, it will be noted that the word 'steal' is used. When the word 'steal' is used it means to take and carry away property of another with the felonious intent to deprive the owner thereof, and to appropriate the same to one's own use. It must be noted that when the word 'steal' is used either in the information or in an instruction, that it carries with it the meaning that the property converted is by felonious intent."

The McDaniels case has been cited in 52 C. J. S., Larceny, § 150, p. 998. And the above quotation has been cited with approval by the Supreme Court of Oregon in State v. Downing, 185 Or. 689, 205 P. 2d 141, 145.

See, also Brannon v. State, 94 Okla. Cr. 261, 234 P. 2d 934.

In the case of Martin v. State, 67 Neb. 36, 93 N. W. 161, the Supreme Court of Nebraska in paragraph one of the syllabus stated:

"An information charging that the accused unlawfully and feloniously did steal, take, and carry away certain property, with the intent then and there to steal and carry away the said personal property, includes therein the element of felonious intent upon the part of the taker to deprive the owner permanently of such property, and convert the same to his own use."

See, also, Hamilton v. State, 142 Ind. 276, 41 N. E. 588; State v. Uhler, 32 N. D. 483, 156 N. W. 220, 226; State v. Fordham, 13 N. D. 494, 500, 101 N. W. 888; People v. Ostrosky, 95 Misc. 104, 160 N. Y. S. 493, 499.

It is our conclusion that the original information, while not a model by any means, was sufficient to charge the crime set out. An examination of the instructions given further shows that the court fully and correctly advised the jury as to all the evidence necessary to constitute the crime. The transcript discloses without doubt that the accused fully understood just what he was charged with. His affidavit for continuance prior to the first trial sought to blame a stranger and phantom person named Huntley whom accused sets out that he just happened to meet on the streets of Hugo and who was supposed to live two and a half mles east of Hugo, and who had lost a yearling of the description of the one the accused was charged with stealing, and who had asked accused to look for his yearling and if found to place it in a pen near the radio station east of Hugo. The prosecution opposed a continuance by reason of the inability of the officers to find anyone who had ever heard of Huntley. Defendant was not re-tried for more than six months after the information was amended.

We think the information sufficiently informed the accused of the offense with which he was charged with such particularity as to have enabled him to prepare for his trial, and so defined and identified the offense that accused might successfully plead such conviction if again charged with the offense in question. This had been held in numerous cases to be sufficient. Coats v. State, 56 Okla. Cr. 26, 32 P. 2d 955; Douglas v. State, 57 Okla. Cr. 154, 47 P. 2d 215.

This court has also held that an information may be amended in matters of either form or substance when it can be done without prejudice to the substantial rights of the accused. And has further held that no amendment shall cause any delay in the trial unless for good cause shown by affidavit. Herren v. State, 72 Okla. Cr. 254, 115 P. 2d 258; Pruitt v. State, 94 Okla. Cr. 387, 236 P. 2d 702. It follows that the accused would not be entitled to a new preliminary examination where the amendment, as here, did not prejudice his substantial rights.

The defendant, a Negro, by reason of the view of counsel, finally adopted by the court, as to the insufficiency of the information as originally prepared, was granted a new trial, and was again convicted when he was tried on the information as amended, and was assessed punishment of five years in the State Penitentiary, whereas at first trial he was assessed but three years.

We believe from a consideration of all the circumstances that justice would best be served by reducing the sentence to four years in the State Penitentiary, and as so modified, the judgment of the district court of Choctaw county is affirmed.

BRETT, P. J., and JONES, J., concur.