## JAMES R. BAYLESS v. STATE.

No. A-1437.   Opinion Filed March 11, 1913.

(130 Pac. 520.)

1. **LARCENY—Information—Allegations as to Ownership—Possession.** In an information for "larceny of live stock" when the ownership of the property stolen is alleged, and that the defendant did then and there willfully, unlawfully, and feloniously take, steal, and carry away by stealth said property without the knowledge or consent of said owner, and with the felonious intent to deprive said owner of said property, and with the felonious intent to convert said

property to the use and benefit of the taker, possession and taking from possession of the owner is sufficiently alleged; the law implying his possession from his ownership.

2. **TRIAL—Questions for Jury—Credibility of Witnesses.** The jury are not bound to believe testimony because it is uncontradicted and not directly impeached. The credibility of the witnesses testifying in behalf of defendant is the exclusive province of the jury to determine, and although such testimony may be uncontradicted, and not directly impeached, when there are facts and circumstances admitted and proven tending to lessen the probability that such testimony is true, the jury may give it such weight as they deem proper, even to the extent of wholly disregarding the same.

3. **APPEAL—Discretion of Court—Jury Disagree on Punishment—Dismissal.** The discharge of the jury without the consent of the defendant, where the jury returned a verdict of guilty and failed to agree on the punishment, is a matter in the discretion of the trial court, and its action will be conclusive, unless there appears to have been a clear abuse of discretion.

(Syllabus by the Court.)

*Appeal from District Court, Le Flore County;*
*Malcolm E. Rosser, Judge.*

James R. Bayless was convicted of larceny of two mules, and appeals. Affirmed.

*Tom W. Neal,* for plaintiff in error.
*Chas. West,* Atty. Gen., *Smith C. Matson,* Asst. Atty. Gen., and *Jos. L. Hull,* Sp. Asst. Atty. Gen., for the State.

DOYLE, J. Plaintiff in error, hereinafter referred to as defendant, was convicted in the district court of Le Flore county, and sentenced to serve a term of 2 1-2 years' imprisonment in the penitentiary on an information, the charging part of which is as follows:

"That the said James R. Bayless on the day and within the county and state aforesaid did then and there willfully, unlawfully, and feloniously steal, take, and carry away by stealth two mules the property of. John Blaylock, without his knowledge, or consent, and with the felonious intent to deprive the said John Blaylock of the said property, and with the felonious intent to convert the same to the use and benefit of him the said James R. Bayless, contrary to," etc.

To reverse the judgment an appeal was perfected. The errors assigned will be considered in the order presented.

First. It is contended that the court erred in denying the motion in arrest of judgment. The motion was based on the ground that the information does not state facts sufficient to constitute the crime of larceny of live stock under the statute. The learned counsel in his brief insists that the information is fatally defective, in that "it fails to allege the possession of the property taken to be in another at the time it was taken." In a prosecution of this character the information is predicated upon the statute defining the crime of larceny of live stock, the ownership of the animals stolen must be alleged and proved, and it is necessary to allege and prove a felonious intent on the part of the taker to deprive the owner thereof, and to convert the same to his, the taker's, own use. *Crowell v. State,* 6 Okla. Cr. 148, 117 Pac. 883. Presumably, possession, actual or constructive, accompanies ownership. Where ownership is alleged, possession is sufficiently alleged, and a specific allegation that the taking was from the possession of the owner is not essential. This information is sufficient in that respect, and we have no doubt whatever of its sufficiency.

Second. That the verdict of the jury is not sustained by sufficient evidence. We think the verdict was amply sustained, and in support of this conclusion we submit a summary of the evidence.

John Blaylock testified, in substance, that at the time in question he was the owner of two mules which he described as two yearling mare mules, one was blue or mouse-colored and the other he would call a yellow bay; that he kept them in a pasture near Heavener; that he missed the mules in the fall of 1908, and employed defendant to help search for them; that the following June he found one of the mules in a pasture near Summerfield in the possession of W. R. Franklin; that Mr. Franklin then paid him for both mules; that originally he bought these mules from John Bayless, a brother of defendant.

John Roberts testified that he lived at Summerfield; that in the fall of 1908 he met defendant and another man on the road east of Summerfield with two young mules. Defendant offered to sell them to him for $85. Defendant said he was on his way to Mr. Franklin.

W. D. Mitchell testified that he lived near Summerfield; that in the fall of 1908 defendant passed his house with another man and they had a pair of mule colts, one was a blue mouse-colored, and the other what he would call a light bay. Since then he saw these mules with Mr. Franklin.

W. R. Franklin testified that he was in the mercantile business in Summerfield. In the fall of 1908 he bought from defendant two yearling mules. One was a mouse-colored, and one sort of brown-colored. In the spring of 1909 these mules were claimed by John Blaylock, and he paid Mr. Blaylock for them. He paid defendant for the mules by paying a $75 note due by him at the Le Flore County Bank and two cash payments of $10 and $5.

On behalf of defendant, Tip Sloan testified that in 1908 he sold defendant a gray mare pony; that he afterwards saw the pony in the possession of some horse traders in Monroe; that his wife was the defendant's sister.

Jim Watson testified, in substance, that he was with defendant when he traded this pony to some horse traders; that defendant gave the pony and $40 for two mules about two years old; that he is a nephew of defendant.

C. D. Pittsford testified that he was present when defendant traded the pony for the mules.

William Kellog testified that he saw defendant's gray pony in the possession of the horse traders.

Oscar Davis testified that he saw these mules in the possession of the horse traders, and about two or three days later he saw the mules at Mr. Franklin's.

In rebuttal the state offered in evidence records of the county court showing the information and conviction of the

witness Jim Watson for the offense of selling intoxicating liquors.

It is argued by the learned counsel that the records show that no attempt was made to impeach or discredit defendant's witnesses Pittsford, Kellog, and Davis, and their testimony, including that of the witness Watson, stood uncontradicted by the state at the time of the submission of the case to the jury.

The jury are not bound to believe testimony because it is uncontradicted, and not directly impeached. The credibility of the witnesses testifying in behalf of defendant is the exclusive province of the jury to determine; and, although such testimony may be uncontradicted and not directly impeached, when there are facts and circumstances admitted and proven tending to lessen the probability that such testimony is true, the jury may give it such weight as they deem proper, even to the extent of wholly disregarding the same. *Wainscott v. State,* 8 Okla. Cr. 590, 129 Pac. 65. Here the defendant, without testifying on his own behalf, attempts to explain his possession of the mules by the story of a trade of a gray pony and some money for them with "some horse traders." Who these mysterious horse traders were is not shown, whence they came or where they went does not appear, and no one seems to have seen them there except defendant's relatives. If defendant's witnesses told the truth in their account of this trade, why did the defendant accept the employment by Mr. Blaylock to search for the missing mules? If the trade really took place, why did not the defendant then tell Mr. Blaylock that he had traded for the mules and had sold them to Mr. Franklin? This surely, would have been the course and conduct of an innocent man. The story of the trade is absolutely inconsistent with the uncontradicted testimony as to defendant's subsequent conduct, and his conduct was absolutely inconsistent with innocence. A common explanation of possession given by the thief upon discovery is that he bought the goods from an unknown person. This explanation is entitled to little weight with the jury, or with the court which is passing on the facts. The ex-

planation may be so improbable that, even if not contradicted by evidence, the jury will disbelieve it. The reasonableness of it is for the jury. See 25 Cyc. 138. It is our opinion that the evidence is amply sufficient to establish beyond a reasonable doubt the falsity of the explanation of defendant's possession.

Third. Error is assigned on the ruling relative to the record proof of the conviction of the witness Watson, contained in the county court. There was no prejudicial error therein.

Several assignments relate to the refusal of the court to give requested instructions. We have carefully examined these assignments and find that the instructions given were more favorable to the defendant than the law warrants. The following instruction was given at the defendant's request:

"The recent or unexplained possession of stolen property is a circumstance which you should consider in connection with the other evidence in the case, but you cannot convict the defendant on such possession alone, unless the possession is recent and unexplained."

Besides this, the court instructed fully on the law of circumstantial evidence. Where the fact of the theft has been shown, and the question is whether or not the defendant committed it, his recent possession of the stolen property is a circumstance for the jury to consider and weigh in connection with the other evidence in the case. The presumption against the defendant is one of fact, to be drawn or not, as the jury may determine, in connection with and in consideration of all the evidence in the case. *Davis v. State,* 7 Okla. Cr. 322, 123 Pac. 560. The defendant cannot complain of an instruction given on his request.

Finally, it is urged that the court erred in refusing to require the jury to retire and reconsider their verdict when they returned a verdict of guilty, which failed to assess the punishment. The record shows that the court instructed the jury as to the penalty to be inflicted. The jury had deliberated some-

50 minutes, and reported to the court that they could not agree upon the punishment. Section 2029, Snyder's Sts., provides:

"Where the jury find a verdict of guilty, and fail to agree on the punishment to be inflicted, or do not declare such punishment by their verdict, the court shall assess and declare the punishment and render the judgment accordingly."

This was a matter within the discretion of the trial court and its action will be conclusive, unless there appears to have been a clear abuse of discretion. There is nothing in the record to show an abuse of discretion.

There being no reversible error, the judgment of the district court of Le Flore county is affirmed.

ARMSTRONG, P. J., and FURMAN, J., concur.