Mathew Dale DALLAS, Plaintiff In Error,

v.

The STATE of Oklahoma, Defendant in Error.

No. A–12174.

Criminal Court of Appeals of Oklahoma.

July 20, 1955.

Rehearing Denied Aug. 10, 1955.

Judd L. Black, Oklahoma City, for plaintiff in error.

Mac Q. Williamson, Atty. Gen., Lewis A. Wallace, Asst. Atty. Gen., for defendant in error.

POWELL, Judge.

Mathew Dale Dallas and Harold Woodrow Stephens were charged jointly in the court of common pleas of Oklahoma County with the crime of aggravated assault. A severance was granted and the defendant Dallas was tried before a jury and found guilty of the included offense of assault and battery, and the jury having failed to fix the punishment, the penalty was assessed by the court at a term of thirty days imprisonment in the county jail, and a fine of $25 and costs.

In defendant's brief the eleven assignments of error set out in petition in error are argued under four specifications of error.

It is first urged that the trial court committed reversible error in refusing to sustain defendant's demurrer to the State's evidence, and in overruling his motion for a directed verdict.

The record discloses that the information was filed under the provisions of Tit. 21 O.S.1951 § 645. The allegations in the information were sufficient to charge the crime of aggravated assault, but as contended by counsel for the defendant, the evidence on behalf of the State was not sufficient to have supported a conviction for aggravated assault. While there was evidence that the prosecuting witness was struck with a chain when he was attacked by the defendant and his co-defendant Stephens, it was Stephens who at all times had possession of the chain and who used his shod feet. The defendant used only his fists in the fight, and though the prosecuting witness had various bruises over his body, none of them were of such seriousness as to meet the definition set out in Minnix v. State, Okl.Cr., 282 P.2d 772, because his injuries were minor and were not such as to give rise to apprehension of danger to life, to health or limb. The evidence was ample, however, to support a conviction for the included offense of assault and battery.

We note that the trial judge gave full and correct instructions defining the essential ingredients of the crime of aggravated assault, and of the lesser offense of assault and battery. The jury was also instructed in substance that if it failed to find from the evidence beyond a reasonable doubt that the defendant was guilty of aggravated assault, that it should consider whether he was guilty of an assault and battery. The court in addition gave a proper instruction defining the term "serious bodily injury" substantially in accordance with the definition set out in Minnix v. State, supra.

 As we have seen, defendant was not found guilty of aggravated assault, the offense charged, but of the included and lesser offense of assault and battery. The question of whether the court should or should not have advised the jury that the evidence was sufficient to support the higher charge cannot form the basis for reversal of the conviction because as it turns out, the question is moot. The State's evidence amply supported the conviction

for the lesser offense of assault and battery. In fact the defendant testified and admitted precipitating the fight involved and admitted going to the car of the prosecuting witness and striking him. Therefore, if the court had been of the opinion that the evidence was not sufficient to support the greater charge, and had so instructed the jury, still there was the question of the sufficiency of the evidence to support the included offense. The court once having by reason of the allegations contained in the information, had the accused properly before it for trial, could not be deprived of completing the trial because the evidence on part of the State was not sufficient to support the greater charge that gave the court jurisdiction in the first instance. The failure of the court to advise the jury that the evidence was not sufficient to support the charge of aggravated assault did not, as the case turned out, in any manner prejudice the defendant, and the error was harmless. If a conviction had been for the greater charge, it would then be the duty of this court to modify the judgment. See Minnix v. State, supra.

 It is next asserted that the trial court erred in refusing to exclude from the jury the oral confession of the defendant for the reason that it was obtained in violation of defendant's constitutional rights. It is pointed out that defendant was only 16 years of age. It is then asserted that the case of Fields v. State, 77 Okl.Cr. 1, 138 P.2d 124, is decisive of the issue.

The record in this case discloses that though the crime charged was alleged to have occurred on September 11, 1954, the arrest was not made until about 7:00 P.M. on September 14, 1954. Both defendants were arrested in their respective homes. The mother of the defendant Dallas was present when he was arrested by Policemen W. B. Gates and Roy L. Tettleton. On the way to the police station the 16 year old defendant Dallas and the officers had a conversation concerning the details of the difficulty had with the prosecuting witness Grady Walker, the afternoon of

September 11, 1954, on West Main Street near Classen in Oklahoma City. At the trial counsel objected to the detailing by the officers of any conversation had by them at a time the mother and guardian of the minor defendant was not present. Thereupon, the jury was excused and in the absence of the jury witness Gates was permitted to relate the conversation he and Officer Tettleton had with Dallas and his co-defendant on the way to jail. The information given the officers by defendant was essentially the same as he testified to on trial, except that in conversation with the officers he was shown to have admitted that he was the aggressor in the difficulty with prosecuting witness Grady Walker and Walker's woman companion.

Officer Gates said that he did not advise defendant that what he said might be used against him.

The trial court after recitation by the officer of the alleged conversation, recalled the jury and permitted both Officer Gates and Officer Tettleton to testify concerning the conversation.

We note that by the evidence of not only the prosecuting witness and his companion, Corrine Thomas, but by the evidence of John Watt and Jerry Vanbibber (in whose car the defendant was riding when the difficulty with Grady Walker was brought about), the guilt of the defendant of the charge was overwhelming.

Officer Hilton Greer was permitted to tell of a conversation with defendant after Dallas was placed in jail. He said that he notified the defendant that he did not have to talk, but that defendant said that the newspapers had the story of what happened mixed up and had given the wrong publicity, and that he wanted to talk. Said witness:

"A. Dallas said they got in a beef with him, this man at 6th and Classen, and they yow-yowed and cussed, about all the way down to Main and Classen, and a short ways between Main and Francis they stopped the car and got out of the car and walked up to Grady Walker's car where they became in-volved in a fight; that they got him down on the pavement and they kicked him several times, and the woman in the car got out with a shoe and beat them over the head.

"Q. With the toe of the shoe? A. That they got in the car and left."

The proposition of law urged has been treated at some length in the case of Fields v. State, supra, cited by the defendant, and in the case of Clark v. State, 95 Okl.Cr. 375, 246 P.2d 422, 423. Those cases may be studied. We adhere to the principle of law set out in the Fields case, and approved in the Clark case, and being:

" 'Waiver' is voluntary relinquishment of a known right, and it must be the result of an intentional relinquishment of a known right, or an estoppel from enforcing it.

"A defendant, 17 years of age, charged with a felony, in the absence of parent, guardian or counsel, should be deemed incapable of waiving the constitutional and statutory safeguards provided by law in a criminal action, unless it appears beyond all doubt that the minor defendant fully understands the effect and the results growing out of such waiver."

A reading of the Clark case discloses that the defendant there was 17 years of age, was tried and convicted in the district court of Oklahoma County on a charge of burglary in the second degree, and was sentenced to serve two years in the penitentiary. On appeal to this court, the only proposition presented was the question of whether the trial court erred in permitting a confession obtained from defendant to go to the jury. After he had been arrested and placed in jail on a liquor charge, it was discovered that his finger prints matched those made by the party who had committed the burglary. Two police officers obtained a statement from defendant in which he admitted the burglary. The evidence showed the statement was freely and voluntarily made, after the accused had been advised by the officers that any statement he might make could be used against him as evidence. The statement was made

in the absence of parent, guardian or counsel.

In the within case the officers did not advise the minor that anything that he might tell them would probably be used against him. They did not take the precautions that should have been taken in the case of a minor. Such negligence could very well cause the reversal of a case. Here, however, the defendant demonstrated he was above the average in intelligence, and was both physically as well as mentally well developed for his age, and we believe fully understood the effect of the statements he made to the officers. And if the court had not permitted the officers to have testified to their conversations with the defendant, which took place out of the presence of his mother, still the evidence to support the conviction would have been overwhelming and we cannot visualize a jury cognizant of their duties and oaths failing to convict. So that, under such circumstances, we are compelled to find that the action of the court in admitting the testimony complained of did not constitute reversible error.

Defendant next challenges the sufficiency of the verdict on the ground that it was incomplete as to form. The verdict, omitting formal parts, reads:

"We the jury, drawn, impaneled and sworn in the above entitled cause, do upon our oaths find the defendant Mathew Dale Dallas guilty of assault and battery."

The verdict was signed by the foreman and nine other members of the jury. After the verdict had been received in open court, the ten members who signed it were polled, and each announced that it was his verdict. After the jury had been discharged from further consideration of the case, but before they had separated, counsel for defendant interposed the following objection:

"Comes now the defendant and objects to the court receiving the verdict. In truth and in fact, it is not a verdict, and cannot be intelligently recorded. It is not proper in form."

The court overruled the objection.

Of course it was the duty of the jury to have fixed the punishment or have said that being unable to agree upon the penalty to be assessed they left that to the court. Apparently the court failed to have prepared the form of verdict to fit the condition that came about.

By a search of the record, we fail to find, in the first instance, that counsel for the defendant requested the court to instruct the jury to fix the punishment in the event of a verdict of guilty. By Tit. 22 O.S.1951 § 927, it is provided:

"Where the jury find a verdict of guilty, and fail to agree on the punishment to be inflicted, or do not declare such punishment by their verdict, the court shall assess and declare the punishment and render the judgment accordingly."

[7] The verdict rendered is not ambiguous or uncertain. It is one finding the accused guilty of the included offense of assault and battery. No attempt was made to fix the punishment. The jury simply failed to reach an agreement in that respect. There can be no misunderstanding of that fact. The statutory provision quoted was to take care of such a contingency. Where an actual attempt is made to fix the punishment but it is not clear what the agreement was or their conclusion is ambiguous, the situation is far different than in the within case. We agree with the Attorney General that the cases of Bayless v. State, 9 Okl.Cr. 27, 130 P. 520, and Downs v. State, 23 Okl.Cr. 404, 215 P. 217, illustrate the problem found in this case, and are in point. In the Bayless case this court said:

"The discharge of the jury without the consent of the defendant, where the jury returned a verdict of guilty and failed to agree on the punishment, is a matter in the discretion of the trial court, and its action will be conclusive, unless there appears to have been a clear abuse of discretion."

It is finally urged that the conduct of the bailiff by improper intrusion into the jury room after deliberations commenced requires a reversal of the case.

Counsel for defendant calls attention to the statutory provision on the subject and pertinent decided cases from this court. It might be well to give the statutes and decisions attention at this point.

Tit. 22 O.S.1951 § 857 provides:

"After hearing the charge, the jury may either decide in court, or may retire for deliberation. If they do not agree without retiring, one or more officers must be sworn to keep them together in some private and convenient place, and not to permit any person to speak to or communicate with them, nor do so themselves, unless it be by order of the court, or to ask them whether they have agreed upon a verdict, and to return them into court when they have so agreed, or when ordered by the court."

There is a further statutory provision covering the duties of an officer or bailiff in charge of a jury while deliberating and being Tit. 21 O.S.1951 §. 390, as amended, Laws 1949, p. 203, § 1, Laws 1951, p. 59, § 1, effective April 20, 1951. In this statute four separate prohibitive acts for guidance of the bailiff are set out. Also it is provided that the bailiff shall make an oath in writing and file it with the clerk to the effect that he will regard these provisions of the statute but will at the same time "have regard to the comfort and well-being of the jurors and all of them, entrusted into his care in each and every jury trial * * *."

The record in this case discloses that the bailiff, Mr. Harmon, duly filed the oath required by the statute.

The record discloses that on hearing of motion for new trial Mr. Black, counsel for the defendant, testified. He swore that he had, during the latter part of the trial, heard of rumors being circulated around the court house that his client was the head of a teen-age gang and that counsel should watch the jury room. This he did, and he said that after the jury had retired to its room he observed the bailiff enter to take a pitcher of ice water, and the bailiff not appearing in what counsel thought to be a reasonable time, he went to the judge and complained to him about the bailiff, and the judge and counsel went to the jury room entrance. That the door was ajar and the judge reached in and pulled the bailiff out and told him to stay out of the jury room.

On cross-examination witness testified that he observed several women jurors leave the vicinity of the jury room before they all had retired to the jury room, apparently to go to the powder room, but that the entire jury had retired before he observed the bailiff, Mr. Harmon, enter the jury room. Witness did not know what facilities there were in the jury room for the men and women because, as he stated, "Frankly, I wasn't in the jury room with the jury." He further stated that he had not at any time examined the jury room and could not say whether it had more than one toilet. Witness admitted that he did not know whether or not the jury had commenced its deliberations when he observed the bailiff enter with what appeared to be ice water. He said that he could not swear that all the jurors were in the room at the time.

In addition to the statutes above referred to, we are cited the cases of Graves v. Territory, 16 Okl. 538, 86 P. 521; Ridley v. State, 5 Okl.Cr. 522, 115 P. 628; Selstrom v. State, 7 Okl.Cr. 345, 123 P. 557; Grable v. State, 60 Okl.Cr. 339, 44 P.2d 152; and Lowrey v. State, 87 Okl.Cr. 313, 197 P.2d 637. See also annotation in 41 A.L.R.2d 288, 309.

Counsel relies particularly for reversal on the Lowrey case. It is urged that defendant made a proper showing of a violation of Tit. 22 O.S.1951 § 857, and as a consequence the burden was then on the State to offer proof to overcome the presumptive prejudice to defendant by reason of the alleged misconduct of the bailiff.

It is our conclusion in view of the principle developed in the above cases from this court, that the evidence of counsel for the defendant in the within case was not sufficient to establish a prima facie case of presumptive prejudice and that the court, therefore, did not err in overruling his motion for new trial.

288

In this connection we would point out that in looking after the comfort of the jury it was proper for the bailiff to take ice water into the jury room for the jurors and to give opportunity to the female jurors to visit some women's rest room prior to commencement of deliberations. There was no evidence here that deliberations had commenced. The door to the jury room was not closed.

In the Lowrey case, for instance, the sheriff there entered jury room while the jury was deliberating. The sheriff had been an important witness for the State. Much feeling existed in the community concerning the case. And whether the sheriff did or did not communicate with the jury, it was by the majority of the court felt that his presence re-emphasized his testimony and prejudiced the rights of the accused in that case. No comparable showing of irregularity was here made.

For the reasons stated, the judgment of the trial court is affirmed.

JONES, P. J., and BRETT, J., concur.